NORTON *vs.* YOUNG.

If in the exchange of goods one party defrauds the other, who elects, for that cause, to rescind the contract ; it is not enough for the injured party to *give notice* to the other, and call on *him* to come and *receive* his goods,—but he must himself return them back to the party defrauding him, before any right of action accrues.

*Assumpsit* for goods sold. At the trial of this cause before *Weston J.* upon the general issue, it appeared that in *June* 1820, the defendant came to the plaintiff's store in *Portland*, and offered him a recognizance of debt signed by one *Procter*, in exchange for its amount in goods ;—that *Procter* at this time was in the country, getting lumber for the plaintiff, but was in doubtful circumstances, *paying only such debts as he chose to pay* ;—that the plaintiff expressed strong doubts about the posibility of enforcing payment, but at last consented to take it, *provided Procter or his wife wished him so to do* ; *otherwise, he would have nothing to do with it* ;—that the defendant then went away, and returned the next day or the day following, pretending to the plaintiff that he had

been to *Procter's* house, which was some miles distant, and that his wife wished the plaintiff to let the defendant have the amount in goods, and take the recognizance ; and that she had sent her son into town to inform him of the same ;—all which, it appeared, was false ;—and that the plaintiff, giving credit to this false statement, delivered to the defendant the goods, and took the recognizance.

It further appeared that the plaintiff, a few days after the delivery of the goods, having discovered the fraud which had been practised upon him, wrote to the defendant, stating that he had defrauded him by such false affirmation, and that he would have nothing to do with the recognizance ; and that the defendant must come and pay for the goods or the plaintiff would sue him ;—but it was not proved that this letter came to the hands of the defendant, nor in what manner it was conveyed.

It was also proved that soon after, in the same month, the defendant sent a written order to the plaintiff to deliver a hogshead of molasses, being part of the goods which he had not taken away with the others ; which the plaintiff refused to deliver, requesting the messenger to tell the defendant that he had deceived the plaintiff, and that the plaintiff *would sue him for the goods already delivered, if he did not come and pay for them* ; which message was duly delivered to the defendant at his house in *Paris.*

About eleven months after the goods were delivered, *Procter* absconded ;—and in *May* 1821, the plaintiff sent back the recognizance to the defendant, by the officer, who immediately afterwards served the writ.

The Judge being of opinion that the plaintiff, in order to rescind the contract on the ground of fraud, and to entitle himself to recover in this action for goods sold and delivered, was bound to return the recognizance to the defendant within a reasonable time, which time he thought had elapsed,—he directed a nonsuit, with leave for the plaintiff to move to set it aside.

*Greenleaf*, for the plaintiff.

As *Procter* was in doubtful circumstances, and paid only such debts as he chose to pay, the recognizance was a useless paper,

unless the debtor would *consent* to pay it to the plaintiff, and thus make it the subject of a new contract between them. Hence its value depended wholly on the truth of the defendant's affirmation; which was wilfully false. Of course the plaintiff was at liberty to *renounce the contract* ; which he did forthwith in a letter to the defendant, which, as the case finds it was sent, must be presumed to have reached him, unless the contrary appear. This renunciation was repeated soon after, by the messenger sent with the defendant's order for the residue of the goods.

The plaintiff then having been grossly cheated, how has he forfeited his right to reclaim his goods ? It is said that he should have *carried back* the recognizance forthwith. But to this it is replied, it was sufficient if he gave notice to the defendant that the contract was ended, requiring *him to come and take away* the paper which he had palmed upon the plaintiff. And this was substantially done. In the words of the Court in *Conner v. Henderson* 15 *Mass.* 322, it was enough if he " put the defendant in the same situation he was in before the delivery ";—by which is understood merely that the *legal property* in the article should be revested in the defendant by renunciation of the contract,—but not that the party cheated should go to the expense of *carrying it back* to his *actual* possession. So in *Hunt v. Silk* 5 *East* 449, it is said that the parties should be put in *statu quo*, which can only be reasonably intended as to rights. If the article be cumbrous, and transported to a great distance, requiring the party injured to be at the expense and risk of a re-transportation of the goods, is virtually denying him any remedy at all.

*Fessenden* and *Willis* for the defendant.

The distinction taken by the counsel for the plaintiff is not supported by authorities, the absence of which clearly shews that such was never understood to be the law. On the contrary all the cases on this subject concur that if the party would rescind the contract, he must *not keep*, but must promptly *return* the article delivered. And the plaintiff well knew that this was his duty, as appears by his sending back the recognizance by the officer who served the writ. This he might as well have done

by the person who came, soon after the contract, with an order for the residue of the goods ; and failing to do this, he has lost his remedy, if any ever existed, by his own neglect. *Hunt v. Silk* 5 *East* 452. *Kimball v. Cunningham* 4 *Mass.* 502. *Conner v. Henderson* 15 *Mass.* 319. *Young v. Adams* 6 *Mass.* 182. *McNeven & al. v. Livingston & al.* 17 *Johns.* 437.

But here was *no fraud.* The allegation of the defendant was only that *Procter assented* to the assignment. Now this was wholly immaterial. His assent did not affect the security, nor the plaintiff's right in it. The plaintiff accepted the recognizance, in payment for the goods, on the credit of the party bound by it. It was then due, and payment might have been enforced by execution immediately. Having accepted it in payment for the goods, he took on himself the risk of its being paid, 7 *D. & E.* 66.

MELLEN C. J. delivered the opinion of the Court.

It appears in this case that the recognizance was committed to the care of the officer who served the writ on the defendant, to be delivered to him ; and that immediately after it was so delivered, the writ was served. From these facts it is evident that the writ was drawn, and the action commenced, before the recognizance was returned to the defendant. This would seem to be an objection to the maintenance of *this* action, even if it had been returned and the action commenced within one month after the right to rescind the contract had accrued. But in answer to this objection it is urged that a *return* of this document to the defendant was not necessary to vest a right of action in the plaintiff ; but that as soon as he had given him *notice* that he meant to rescind the contract on account of the defendant's misrepresentations, he had done all the law required, and it was the duty of the defendant to come and receive or send for the recognizance ; and that such offer to abandon the contract, accompanied by such notice was sufficient. The cases which have been cited do not appear to support this position. In *Kimball v. Cunningham* 5 *Mass.* 502. *Parsons C. J.* says—" If he " (the plaintiff) chooses to consider the contract as void, he must

" *return the horse* within a reasonable time.—If he had *exchanged*
" horses and given money as boot, he may not only maintain that
" action for his money, but also trover for the horse he parted
" with in exchange ; but he ought not to *retain* any part of the
" consideration he received upon the sale or exchange ;—as, if
" in the exchange he received money in boot, he ought to *return*
" not only the unsound horse, but also the money received."
The case of *Conner v. Henderson* 15 *Mass.* 319, proceeds on the
same principle.   The Court decided that it was the duty of the
plaintiff to *return the casks* to the defendant, before a right of
action could accrue ;—and this must have been done in a reason-
able time.   The same doctrine is recognized in the other two
cases cited by the defendant's counsel.   It does not appear to
have been contended in argument that the return of the recog-
nizance to the defendant after the lapse of more than a year was
within a *reasonable* time.   These cases shew what is meant by
placing things in *statu quo*, in order to enable a party to *rescind* a
contract.

On the facts before us we are of opinion that the action cannot
be maintained.

*Plaintiff nonsuit.*