By the Court. Duer, J.
The object of this bill is to charge the separate estate of Mrs. Blakeman, a married woman, with the payment of various sums of money, that are alleged to- be due to the plaintiff, for his disbursements and services as her *539 solicitor and counsel, in several suits in relation to her estate, in which she employed him. A decree in his favor has been rendered at a special term of the supreme court, for the whole amount of his claims, and it is upon an appeal from this decree that the cause is now before us.
We are satisfied that all the material allegations in the bill in relation to the employment of the plaintiff, and the nature and value of his services, are sufficiently established by the proofs, and consequently that we have only to consider the question of law, whether he is entitled, in whole or in part, to the relief that has been decreed to him.
The bill avers that all the suits, in which the plaintiff was employed, had a direct relation to the estate held in trust for Mrs. Blakeman, and that when he was employed, it was expressly understood and agreed, that he should be paid for his services, out of this estate, and that it was upon the faith of this agreement that his services were rendered. The bill also avers, that in two of these suits, those which are last mentioned in the bill, the assent of Mrs. Blakeman’s trustee to the employment of the plaintiff, upon the terms that have been stated, was expressly given, but there is no such averment in relation to the remaining suits, nor does it appear from the evidence that such was the fact.
In order to determine whether a proper decree has been made, we must first inquire into the nature of the estate or interest of Mrs. Blakeman, in the property which is sought to be charged, and which the bill and even the decree describes, as her separate estate. If this description is true, the propriety of the decree in its present form, is not to be questioned, for no doctrine is more •fully and clearly established, than that a feme covert in regard to her separate estate is considered, in equity, in all respects, as a feme sole.
The rule was first laid down in these "broad terms, by Lord Hardwicke, in Peacock v. Monk, (2 Ves. Sen. 190,) and for a time, courts of equity seem to have hesitated as to its adoption, and were disposed to qualify and restrict its application. No traces, however, of such hesitation and doubt, are to be found in the more recent decisions. But on the contrary, they have *540 adopted and carried out the rule in the fullest sense that its terms import. Consequently, it is now certain that where real or personal property is settled to the separate use of a married woman, her power of disposition and control is subject to no other limitation or restraint, than such as the terms and the settlement directly and plainly impose. Where no such limitation exists, the power to sell and convey her separate property, necessarily includes the power to charge it with the payment of debts, and in all cases, where with her knowledge and assent, credit is given to her upon the faith of her separate estate, the creditor acquires a lien which a court of equity will enforce. (Hume v. Tenant, 1 Bro. Ch. Ca. 16; S. C. 2 Dickens 560; Fettiplace v. Gorges, 1 Ves. Jr. 46; 3 Br. Ch. Ca. 8; Essex v. Atkins, 14 Ves. 542; Heathy v. Thomas, 15 Ves. 596; Murray v. Barlee, 3 M. & K. 220; Owen v. Dickinson, 1 Cr. & Ph. 53; Tullett v. Armstrong, 1 Beav. 1.)
In some of our sister states, a rule exactly the converse of that which prevails in England, has been adopted, but our own decisions have followed substantially the English doctrine. (Jaques v. Meth. Epis. Church, 17 John. 548; North American Coal Co. v. Dyett, 7 Paige 9; S. C. 20 Wend. 570; Gardner v. Gardner, 7 Paige 112; Cumming v. Williamson, 1 Sand. Ch. R. 17; Curtis v. Engel, 2 Ibid. 287.)
Had the trust deed, which is in evidence in this case, been executed before the revised statutes were in force, this equitable doctrine would have been applicable in its whole extent, and as the terms of the deed impose no restraint on Mrs. Blakeman’s power of disposition, we could not have hesitated to affirm the decree exactly as it stands. Upon this supposition, Mrs. Blake-man would have been an equitable tenant for life with an unlimited power to dispose of and charge her estate, and the facts set forth in the bill and substantiated by the proofs, would have given to the plaintiff an unquestionable title to the relief that he has obtained. But the deed was not executed until 1842, and we agree with the learned counsel for the defendant, that this circumstance has rendered the authorities upon which the plaintiff’s counsel mainly relied, wholly inapplicable. It is in the revised statutes that we must now seek the rules, that in con- *541 staling the trust deed we are hound to follow. And it is by a reference to their provisions, that not only the validity of the trust, but the nature and extent of Mrs. Blakeman’s interest in the lands which the trust embraces, must be determined. Applying this test, it is impossible to say, that these lands were her separate estate, for this ms so far from being true, that in reality she had no estate or interest in them at all; the whole, legal and equitable, by the express words of the statute, being vested in her trustee. (1 Rev. Stat. 727, § 60.)
The trust which the deed creates, is to receive the rents and profits of the lands, and pay them over to Mrs. Blakeman, to her separate use during her life, and it is therefore valid, according to a recent decision of the court of appeals, which has fortunately settled a long disputed and very doubtful question, (Leggett v. Perkins 2 Comstock’s R. 297,) as an express trust under the third subdivision of section 55, in the article of uses and trusts. (1 R. S. 728.)
By a subsequent section in the same article, it is declared, that no person interested in such a trust can assign, or in any manner dispose of his interest, and we entirely assent to the opinion of Chancellor Walworth, in L'Amoureux v. Van Rensselaer, (1 Barb. Ch. R. 36,) that the necessary effect of this prohibition, is to prevent the beneficiary from pledging the rents and profits by anticipation, and from creating any lien thereon, in law or in equity, by any contract means or process whatever. The words of the statute operate as an absolute restraint of alienation in any form. A charge upon lands, or upon the rents and profits, is a contingent disposition of them, partial or entire, according to the amount of the charge, and it is obvious that the amount of the charge, or of successive charges, may be such as to absorb, when enforced, the whole value of the lands, or the whole rents and profits during the continuance of the trust.
It follows from these observations, that the claims of the plaintiff, so far as they rest upon the personal agreement of Mrs. B., her promise, that he shoidd be paid out of the rents and profits, cannot be sustained; she had no right to make the promise, nor have we the power to compel its execution. These items, therefore, in his account which embraced the costs and fees for his profes *542 sional services in the three suits which are first mentioned in the bill, must be rejected. The employment of the plaintiff in these suits, was the act of Mrs. Blakeman and her husband, without the co-operation of the trustee; it was with them, alone, that the special agreement for his compensation was made, and it is upon the validity of this, agreement, as creating, in connexion with the nature of his services, an equitable lien, that his claim to the aid of the court is exclusively founded. It was, however, urged upon the argument, that if the existence of a positive lien, as resulting from the agreement of the parties, must be denied, yet the plaintiff, as a creditor, is entitled to the satisfaction of his debt, from the surplus rents and profits, under section 57, in the article of uses and trusts. (1 Rev. Stat. 729.) But this section is limited by its terms to demands, for which the debtor is personally liable, and which are capable of being enforced by an execution at law. A married woman, who is incapable during her coverture of contracting debts for which she is personally liable, is not within the purview of the section, and can have no creditor entitled to the remedy which it gives. This construction was given to the statute by the chancellor, in L'Amoureux v. Van Rensselaer, and it has been followed by Vice-Chancellor Sand-ford, Rogers v. Ludlow, (3 Sand. C. R. 104.) It is alleged in the bill, that the suits in which the plaintiff was retained by Mrs. B. and her husband, related to the trust estate, and that it was for the purpose of protecting the estate against the claims of the creditors of the husband, that his services were required; in other words, that his services were rendered for th§ benefit of the estate; but although this fact, without any express agreement, may be sufficient to sustain a charge upon rents and profits, when a married woman has a separate estate, and an unrestricted power of disposal, yet we apprehend, that when she has no such estate and no such power, the assent of her trustee is indispensable. Even in England, we infer from the cases, that this assent is necessary, where a feme covert, having a separate estate, is restrained from alienation.
Although, for the reasons that have been given, the larger portion of the claims of the plaintiff must be disallowed, it by no means follows, that the decree which he has obtained is to be *543 wholly reversed. On the contrary, as to the residue of his claims, we have no difficulty in sustaining it. In the other suits that are mentioned in the bill, he was employed by the trustee as well as by Blalceman and his wife, and it is expressly alleged, and we think sufficiently proved, that the trastee was a party to the agreement for his compensation. The object of the plaintiffs in, these suits, was to charge the debts of the insolvent husband upon the trust estate; in other words, to set aside the trust deed, which was a post-nuptial settlement, as fraudulent and void. The defence of those suits was, therefore, a duty, which the law imposed upon the trustee, and for all reasonable expenses incurred by him in the discharge of this necessary duty, he was entitled to reimburse himself from the funds in hand, and from such as he might thereafter receive from the trust estate. The law is most clearly settled, and it would be a reproach to its principles or its administration, were it otherwise, that all the necessary expenses of a trustee, that is, all expenses of every kind, which are reasonably and in good faith incurred by him, for the defence, protection, or reparation of the estate, are to be treated in equity as a charge, in all cases, upon the rents and profits, and when incurred for the benefit of the whole estate, that is, for the benefit of those entitled in remainder as well as the immediate cestui que trust, upon the inheritance and fee. (Hide v. Haywood, 2 Atkyns 126; Balsh, v. Hiqhsham, 1P. Will. 455; Caffrey v. Darby, 6 Ves. 499; Worrall v. Hartford, 8 Ves. 8; Dawson v. Clarke, 18 Ves. 254; Wilkinson v. Wilkinson, 2 Sim. & St. 251.) Pior ° can it be doubted, that where the trustee is not willing to render himself personally liable, he may, by an express agreement, transfer his own equitable lien to a third party, by whom the necessary funds are advanced, or the services from which compensation is due are rendered. (Oases ut supra)
That such are the general rules of law, was not denied by the learned counsel for the defendant; but he strenuously insisted that where a trust is created under the revised statutes, in relation to the receipt and application of rents and profits, the trustee has no .claim to be reimbursed for any expenses, however necessary, that are not expressly authorized by the terms of the trust, nor can it be denied that there are some expressions in the opinion *544 of the chancellor, in L'Amoureux v. Van Rensselear, which, detached from the context, may seem to bear this interpretation. But it is impossible that such could have been the meaning of the chancellor. The doctrine in equity is so unquestionable and familiar, that it may be regarded as elementary, that all the necessary expenses of a trustee are to be reimbursed to him out of the estate, although no provision whatever in relation to such expenses is contained in the deed or other instrument, by which the trust is created. In every such instrument, there is an implied direction that all such expenses as the preservation or protection of the estate may require, shall be incurred, and an implied stipulation or promise, that when incurred, they shall be a charge upon the estate. (Worrall v. Hartford, 8 Ves. 4; Lewin on Trusts 455.) It is certain that no provision is to be found in the revised statutes, by which the rights and duties of trustees, in relation to expenses incurred by them in the execution of their trust, are in any degree varied or affected, and we shall not dwell on the injustice and absurdity of a doctrine, that would enable a trustee, without a violation of his trust, to surrender the possession of the trust property, to any person who upon any grounds might choose to claim it.
The agreement of the trustee, in the present case, that the plaintiff should be compensated for Ms services, out of the rents and profits of the estate, was reasonable and just, and must be carried into effect. The decree, however, must be so far altered, as to limit the recovery of the plaintiff to the sum with interest, that the agreement of the trustee embraced; and thus modified, it is affirmed, but without costs to either party on this appeal.