WARNER & ARNOLD vs. JAMES VALLILY.

A. sold to B. certain personalty on credit, upon the faith of B.'s representations, which proved false and fraudulent. B. soon after the sale mortgaged the personalty to a third party, and also made some payments to A. on account.

*Held*, that A. could maintain trover and conversion against B. without first notifying B. that the contract of sale was rescinded, without demanding the personalty from B., and without tendering to B. the amount received in part payment.

*Held*, further, that the amount received by A. as part of the consideration was, upon his bringing trover against B., retained as part of the indemnity due from B., and was to be deducted from the amount of damages recoverable by A. from B.

In trover the rule measuring damages is flexible. If the plaintiff has a qualified interest in the chattel converted, he will recover a sum sufficient to indemnify him, not the whole value of the chattel with interest from the time of conversion.

EXCEPTIONS to the Court of Common Pleas.

*January* 7, 1882. DURFEE, C. J. This case comes up on exceptions from the Court of Common Pleas. The action is trover for the conversion of a bar for a saloon. The plaintiffs submitted testimony to show that they had sold the bar to the defendant on credit for thirty-four dollars, on the faith of certain representations made by him in regard to his property and business, which were false and fraudulent; and that the bar was soon after the sale mortgaged by the defendant, along with other property in the saloon. It was also in evidence that the plaintiffs, after selling the bar, did work for the defendant to the amount of ten dollars, and had been paid twenty dollars on account. The defendant contended that the action would not lie without proof that before bringing it the plaintiffs had rescinded the sale, demanded the bar back, and tendered the money received for it, and asked the court so to rule. The court however denied the requests, and ruled the contrary. The question is whether the court was in error.

We are of the opinion that no formal rescission was necessary before the action, the sale being voidable at the election of the plaintiffs, and the action itself being proof of their election to avoid it. We think too that no previous demand was necessary, the fraudulent purchase being in itself a tortious conversion. *Thurston* v. *Blanchard*, 22 Pick. 18; *Gage, Dater & Massey* v. *Epperson*, 2 Head, 669; *Stevens* v. *Austin*, 1 Met. 557; *Ferguson* v. *Carrington*, 9 B. & C. 59.

The other point demands a more elaborate consideration.

There can be no doubt that the cases generally hold the rule to be, that where the vendor undertakes to rescind the sale for fraud, he must, before suing for either the goods sold or their value in money, return or tender to the vendee whatever valuable consideration he has received for them, whether it be goods, moneys, or securities. *Kimball* v. *Cunningham*, 4 Mass. 502; *Thayer* v. *Turner*, 8 Met. 550; *Cook* v. *Gilman*, 34 N. H. 556; *Norton* v. *Young*, 3 Me. 30; *Cushing* v. *Wyman*, 38 Me. 589; *Buchenau* v. *Horney*, 12 Ill. 336; *Wheaton* v. *Baker*, 14 Barb. S. C. 594; *Fraschieris* v. *Henriques*, 36 Barb. S. C. 276; *Stevens* v. *Hyde*, 32 Barb. S. C. 171; *Fisher* v. *Conant*, 3 E. D. Smith, 199; *Weed & Morris* v. *Page*, 7 Wis. 503.

It is to be remarked, however, that the cases which so hold are mostly, if not wholly, cases where goods were given for goods, or where the action was replevin or in the nature of replevin to recover the goods sold in specie, and not simply trover for their value in money. It is easily seen why the rule ought to be applied in such cases: for if not applied, the fraudulent vendee may lose what the vendor has received from him, and the vendor get justice without doing it. We fail to find any case in which the rule has been applied in an action of trover against the fraudulent vendee, where the vendor has received nothing but money. It seems to us so unnecessary and so injurious to apply the rule to such a case, that, unless constrained, we are unwilling to do it.

The case is this: A. is induced by B.'s fraud to sell him goods for which he is partly paid in money. A. discovers the fraud, and elects to rescind the sale and sue B. for damages in trover. The question is: Must he before suing return the money? If he offers to return, B. cannot accept without virtually confessing the fraud, and so virtually confessing that A. ought to have not only all the money which he has received, but more too, by way of indemnity. On the other hand, if B. refuses the money, he virtually asserts the validity of the contract, and so virtually asserts that A. is entitled to the money under it. Or, looking at the matter from the vendor's point of view, if B. receives the money, then A. on making out the fraud, which B.'s reception of the money will help him to establish, will recover judgment for a sum greater than he has

returned; but with this disadvantage, that he will only have a judgment, whereas he did have a part of the sum in hand, and but for the rule might have kept it, and taken judgment simply for the residue. Or suppose, if the supposition be admissible, that B. after taking back the money gets judgment in the action of trover, then A., the validity of the sale being established, will be entitled to the money again under the contract, but he will have to sue for it in *assumpsit*, unless B. voluntarily repays it. It is clear, therefore, that the rule is useless, and worse than useless, in such a case and ought not to be applied without necessity.

There are only two reasons, so far as we discover, which are given for the rule, sometimes one and sometimes the other being assigned. One is the protection of the vendee. This is the reason given by Chief Justice Shaw, in *Thayer* v. *Turner*, 8 Met. 550, 552. But however valid this reason is when the vendor has received goods for goods, or seeks to recover the goods sold in specie, it is not valid, as we have just seen, where he has received only money and seeks to recover simply pecuniary damages, inasmuch as the money received can go to reduce the damages to be recovered.

The other reason, more frequently given, is that the vendor cannot rescind the contract and retain the money, because he cannot rescind it in part and affirm it in part, but must rescind *in toto* if at all. It is here assumed that the vendor, if he keeps the money, can only keep it in part fulfilment of the contract. But is it necessarily so ? The position of the vendor is that he has been swindled out of his goods under the guise of a contract, the contract and the money paid on it being a part of the artifice or contrivance by which the fraud was consummated. He keeps the money not as part fulfilment of the contract, but as part indemnity for the fraud which has been perpetrated on him, intending to deduct it in his action.

The question is, will the law permit him to do so ? Will it allow him to keep as indemnity what he received as consideration ? We do not see why it will not, for *ex hypothesi* he was deceived into receiving it as consideration by the vendee, and therefore came under no obligation to him to keep it as such, nor still less to return it before bringing suit for the tort. The vendee,

considering his fraud, gets all if not more than all he merits when he is allowed a deduction *pro tanto* in the damages.

It may be asked, ought not the vendor to make the tender in order to give the vendee an opportunity to return the goods ? We do not see that he ought. It is the innocent, not the tortious possessor, who is entitled to such an opportunity. The vendee cannot, by returning the goods, undo the tort which he committed in obtaining them. The payment matters nothing, since the vendee pays the money for the purpose of fraudulently getting the goods, and not for the privilege of restoring them if the fraud comes to light. The most he can ask is protection, not privilege, and he is amply protected by having the payment go in mitigation of damages. Here, moreover, the vendee has been guilty of a double conversion ; having, according to the uncontradicted testimony, mortgaged the bar after obtaining it. The mortgage, if given for a fresh consideration, without notice of the fraud, is good even against the vendor, and of course the vendor cannot know whether it was so given or not. He could not receive it back without running the risk of a lawsuit with the mortgagee. What claim can the vendee have to an opportunity to return the bar in these circumstances ? See *Masson* v. *Bovet*, 1 Denio, 69. It seems to us that if he ever could have had such a claim he has forfeited it.

The views which we have here taken are not entirely unsupported by authority. In *Stevens* v. *Austin*, 1 Met. 557, the fraudulent vendee paid part of the price down. He afterwards transferred the goods to the defendant, who purchased knowing the fraud. The plaintiff sued in trover without any previous tender. The court held that the action would lie, the tender being purely a matter between the plaintiff and the original vendee. The court could not have so held without virtually holding that the tender was not necessary to rescission, for clearly the action could not have been maintained so long as the sale remained unrescinded. In *Clough* v. *London and Northwestern Railway Co.* L. R. 7 Exch. 26, 37, the same point raised in favor of the plaintiff was decided in the same way.

There are numerous cases which hold that where the fraudulent vendee has given his note, or even, according to some cases, the note of another person, especially if such other person be insol-

vent, it is not necessary for the vendor to return or offer to return such note before suit, but it is enough for him to bring it into court to be impounded at the trial. *Thurston* v. *Blanchard*, 22 Pick. 18; *Frost* v. *Lowry*, 15 Ohio, 200; *Duval & Iglehart* v. *Mowry*, 6 R. I. 479; *Nellis* v. *Bradley*, 1 Sandf. 560; *Coghill* v. *Boring*, 15 Cal. 213; *Nichols* v. *Michael*, 23 N. Y. 264; *Ladd* v. *Moore*, 3 Sandf. 539; *Fraschieris* v. *Henriques*, 36 Barb. S. C. 276. In the last named case the paper had actually been negoti-ated, and was not in the plaintiff's possession when he commenced suit, and yet the court held that its production at the trial was sufficient, being all that was necessary to shield the vendee from injustice. In *Ladd* v. *Moore*, the court goes still further. There the vendee had paid $200 in cash, and given his note for the residue of the price. At the maturity of the note the vendor inquired for the vendee at his residence, but was unable to learn anything of him. The court held that trover would lie without any previous tender of the money and note, the note being produced at the trial, and the $200 being allowed in mitigation of damages. In *Wheaton* v. *Baker*, 14 Barb. S. C. 594, the court, referring to *Ladd* v. *Moore*, recognize the distinction between replevin and trover, which we have herein before insisted on, and remarking that in that action damages only were to be recovered, say " there was no difficulty in adjusting the amount and abating the sum which the plaintiff had received in money." In *Duval & Iglehart* v. *Mowry*, 6 R. I. 479, the case of *Ladd* v. *Moore* is cited, with full approval, in a strong opinion delivered by Chief Justice Ames. We think there can be no doubt from the language used in that opinion, that, if the case had involved the point here raised, the court would have decided it in favor of the plaintiff.

There is nothing in the rule of damages to prevent such a decision. Ordinarily, it is true, the measure of damages is the value of the goods converted with interest from the time of conversion. But the rule is not inflexible. It is every day practice, when the plaintiff has only a qualified interest, to qualify the damages accordingly; as, for instance, where a mortgagee under a chattel mortgage sues the mortgagor for converting the chattel, he recovers only to the extent of the debt secured with interest. In *Chinery* v. *Viall*, 5 H. & N. 287, A. bought some sheep of B. and

left them in B.'s custody. B. before the time of payment arrived, and without calling on A. for payment, sent them away and re-sold them. The court held the re-sale to be a conversion for which A. could maintain trover against B. *without first tendering him the price,* and that the measure of the damages was not the value of the sheep, but the loss sustained by A. in not getting the sheep at the contract price. The case is instructive, not only in regard to the flexibility of the rule of damages in trover, but also in its bearing on other aspects of the case at bar.

The exceptions are overruled, and the judgment of the court below affirmed, with costs.         *Exceptions overruled.*

*Charles H. Page,* for plaintiffs.

*George J. West,* for defendant.