Rood vs. Priestley.

Rood vs. Priestley.

*September 7 — September 25, 1883.*

*Court and Jury — Sale of Chattels.*

In an action for the purchase price of lumber, the evidence being conflicting, it was for the jury and not for the court to determine (1) whether the lumber was delivered under one entire contract so that the acceptance of a part would operate as an implied acceptance of the whole; (2) whether the lumber delivered was of the kind and quality contracted for; and, if not, (3) whether, after discovering the defects and notifying the plaintiff thereof, the defendant kept the lumber in a safe and suitable place reasonably convenient for delivery to the plaintiff upon demand and the payment of lawful charges.

APPEAL from the Circuit Court for *La Fayette* County.

Rood vs. Priestley.

Action to recover the purchase price of lumber alleged to have been sold and delivered to the defendant. The plaintiff resided at Monroe and the defendant at Darlington, Wisconsin. The answer, besides a general denial, alleges that the plaintiff agreed to deliver to the defendant, at Darlington, a certain specified bill of lumber; that subsequently the plaintiff shipped a car-load of lumber to the defendant, falsely representing it to be the bill of lumber contracted for, and requested the defendant to pay the freight thereon, which the defendant did, relying on the plaintiff's representations; that upon payment of the freight the lumber was delivered to the defendant and he acquired a lien thereon for the amount so paid, and has since retained the lumber solely for the purpose of securing such lien; that the lumber contracted for was, as the plaintiff knew, intended to be used in building a barn, but that the lumber delivered was not of the dimensions or quality contracted for; that the defendant never accepted such lumber, but bought the lumber for his barn elsewhere; and that by the failure of the plaintiff to fulfil the contract the defendant was delayed and put to trouble and expense, to his damage $50, for which sum, as a counterclaim, he demands judgment.

It appeared from the evidence that at the time the contract was made between the parties, the plaintiff also sold to one Blakely a quantity of lumber to be delivered at Darlington. The lumber so sold to Blakely not being sufficient to fill a car, it was then agreed that the plaintiff might fill the car with fencing and that the defendant would take the same, at an agreed price, at Darlington. Such fencing was delivered to the defendant and constituted a part of the lumber mentioned in the complaint, but is not included in the bill of lumber alleged in the answer to have been contracted for. Other evidence given on the trial, and the instructions to the jury, will sufficiently appear from the opinion. There was

Rood vs. Priestley.

a verdict for the plaintiff, and from the judgment entered thereon the defendant appealed.

For the appellant there was a brief by *Orton & Osborn*, and oral argument by *Mr. Orton*.

*D. S. Rose*, for the respondent.

COLE, C. J. It is admitted that defendant retained the fencing lumber, and that he actually used some of it. So far as that portion of the lumber is concerned there was no offer to return. Now, how does that fact affect his liability as to the rest of the lumber, or his right to refuse to accept it because not complying with the contract? This turns upon the question whether the contract for the purchase of the fencing and barn lumber was entire, or whether they were several and distinct contracts. The learned counsel for the defendant claims that the contract for the purchase of the fencing was entirely independent of the contract to purchase the barn lumber, and that the lumber on one agreement might be accepted, while the lumber on the other was rejected because not such as contracted for. Looking at the bills alone, the matter is left in doubt whether the fencing and barn lumber were purchased under one contract or not. But there is considerable testimony which tends to prove that the purchase of the fencing was not connected with the contract for the barn lumber,— that it was an independent matter, that lumber being put in to fill Blakely's car and "make a load." On the trial before the justice we understand the plaintiff himself testified that the fencing was not a part of the barn lumber bill, and " had nothing to do with it." There is other testimony in the case of the same purport. It would not be proper to express an opinion as to the effect of the testimony on this point; but it seems to us it was a fair question to be submitted to the jury as to what the real fact was. The learned circuit court did not submit the question as it should have done, whether the contract

Rood vs. Priestley.

for the purchase of the lumber for the barn also included the fencing, so as to make the acceptance of the latter operate as an implied acceptance of all the lumber shipped.

In the event the jury had found that the contracts were distinct, then obviously these questions would arise: (1) Was the lumber sent for the barn substantially what was contracted for, so as to fulfil that contract? The defendant insists that it was not of the dimensions, kind, or quality specified, therefore he was not bound to accept it. It is admitted that no 26-feet or 36-feet pieces were sent, as specified on the carpenter's bill; but the plaintiff says that the agreement was that shorter pieces which could be spliced were to be furnished in lieu of the long lumber. The parties further disagree as to whether some of the other lumber furnished on the barn bill was of the kind and quality specified. Obviously this was a question for the jury to determine from the evidence. (2) If it should be found that the timber and lumber furnished for the barn were not such as was contracted for, then the further inquiry arises whether the defendant so dealt with this lumber as to render himself liable to retain and pay for it. This seems to have been the controlling point in the mind of the learned circuit judge; for, after deciding as a question of law that the contract for the purchase of the fencing and barn lumber was one contract, he charged as follows: "If the lumber in question was shipped to Darlington by plaintiff, upon defendant's order or agreement to buy lumber to be received by defendant at Darlington, and the lumber was received by defendant at Darlington and carried into the country, and a part of it used by him, and the remainder was not returned to Darlington with an offer to return it to plaintiff at the place from which defendant took it, then there was an acceptance in law of the lumber which renders the defendant liable for the lumber at the agreed price. If there was a shortage in the lumber, it was an acceptance of the lumber less the

shortage. If the defendant desired to release himself from
liability, on the ground that there was a failure of quality as
ordered, he should have hauled it back to Darlington, the
place where he received it, and notified the plaintiff that it
was subject to his order at that place after he should be re--
imbursed for advanced freight charges."

We think there is material error in this charge. It de-
cides a question which should have been left to the jury,
namely, whether the contract was entire or not. It gives
prominence to the circumstance that the fencing was used,—
a fact of no significance if that lumber was purchased on
another agreement. Again, the court holds, in effect, that
it was necessary for the defendant — if he desired to relieve
himself from liability to accept, on the ground that the lum-
ber and timber furnished for the barn were not such as were
contracted for — to haul such lumber and timber back to the
depot, in Darlington, and notify the plaintiff that it was
there, subject to his order, on his being repaid the freight
which he had advanced. Now, this lumber came to Dar-
lington in a railroad car; the defendant had never seen it.
Of course, he had the right to remove it from the car to
some suitable place where he could examine it and see if it
was of the kind and quality purchased. It appeared the de-
fendant lived about a mile from the depot. He hauled the
lumber home, and, on examination, found (as he says) that·
it was not such as he had contracted for. He notified the
plaintiff of the fact, saying he was willing to use the lumber
sent which corresponded to his order, providing he was per-
mitted to get the other lumber at the yards in Darlington at
the plaintiff's expense,— he, of course, paying the contract
price. The plaintiff declined to accept this proposition, in-
sisting that he had sent lumber of the dimensions, kind, and
quality which he had agreed to furnish. Now, what, under
the circumstances, was the defendant bound to do, assuming
that his claim as to the defective character of the lumber

was well founded? Was he bound to take the lumber back to the depot, and leave it there somewhere on the grounds? He surely would have no right to put the lumber on the depot premises without the consent of the company. If consent were given to the lumber being placed on its grounds, it is evident the company would be under no obligation to take care of and protect it. It is plain that the lumber, at such a place, would be much exposed to fire and depredation. Was it the duty of the defendant to hire some one to take care of the lumber while it remained on the depot grounds? We do not think the law imposed upon the defendant the duty, on discovering the defects in the lumber, of taking it back to the depot grounds, where he would have no right to leave it, and where it would necessarily be exposed to great danger. But he would discharge his duty in the premises by removing the lumber to some suitable and convenient place of his own selection, where it could be safely kept for the plaintiff until the latter should pay the advanced freight charges and take it into his possession. Therefore, we think, it was a question which should have been submitted to the jury, whether the defendant, on hauling the lumber to his home — a mile distant — for the purpose of examination, and keeping it there after discovering and notifying the plaintiff of its defects, did not have the property at a safe and suitable place, reasonably convenient to the depot, to be delivered to the plaintiff when demanded and the lien discharged. The jury might have found, in view of all the circumstances, in favor of the defendant, had the question been submitted. That the question was eminently one to be passed upon by the jury seems to us too plain for discussion.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.