GEORGE TYLER, and another, vs. CITY OF AUGUSTA.

Kennebec.    Opinion February 19, 1896.

*Sale. Warranty. Rescission. Recoupment.*

The defendant purchased of the plaintiffs two road machines in Boston with special warranty as to quality and effectiveness in operation. The sale was absolute and the title passed to the vendee upon their delivery to the carrier in Boston. *Held*; that if the defendant would rescind the sale for breach of warranty it must return the machines to the vendors in Boston. This it did not do, nor offer to do.

The defendant declined to recoup damages in this action. *Held*; that the plaintiffs may recover, therefore, the price of the machines.

ON REPORT.

This was an action of assumpsit on an account annexed to recover five hundred dollars, the price of two American Champion road machines sold by the plaintiffs to the defendant on the second day of April, 1894. The plea, the general issue.

The plaintiffs' testimony showed as follows : They reside in Boston, and in the spring of 1894, were the general agents for the sale of the American Champion road machines, so-called. On the second day of April, 1894, their traveling salesman, Mr. Piers, came to Augusta and met by appointment the mayor of the city, Mr. Milliken, and Mr. Davis, the chairman of the committee on highways, on the part of the city government. The meeting took place at the store of Mr. A. W. Brooks who had interested himself somewhat in the matter of the purchase of the road machine by the city, and was himself to receive a commission in case a sale was effected, as all the parties to the trade understood. After considerable conversation, the representatives of the city concluded to purchase one American Champion machine for the sum of two hundred and fifty dollars, f. o. b.

boat at Boston, with a discount of 5 per cent for cash in ten days, and Mayor Milliken then and there signed the following order:

"Augusta, Me., April 2, 1894.

"Messrs. George Tyler & Co.,
43 & 45 South Market Street, Boston, Mass.

"Gentlemen:

"Please ship on or about as soon as possible to (first boat leaves Boston, April 10th). By boat:

1 American Champion Road Machine, @ $250 00
5 per cent off cash ten days.

"Machine warranted by you for one year to be of good material and workmanship and to do as claimed for them in your circular.

Chas. A. Milliken, Mayor."

On the back of the order was the following:

"Warranty for the American Champion and Steel Champion Reversible Road Machines.

"1st. To be the Lighest Draft Machines on the market.

"2d. To be of the very best material and workmanship.

"3d. To be simply and thoroughly constructed on mechanical principles.

"4th. To move as much earth in the same time as any competing machines, and to plow successfully in any soil, whether baked clay, gumbo or prairie soil.

"5th. To be successful graders, levelers and earth carriers.

"6th. To be easily operated under all conditions.

"7th. To be reversed in less time than competing machines.

"8th. To run more steadily than competing machines.

"9th. To make from one-half to a mile of road per day, according to width of road, condition of soil, etc.

"10th. To operate successfully in all work of road building and repairing, moving earth to the right or left or directly forward, to plow their own ditches, cut down banks, widen roads and in short do any work that can be done by any road machine.

"11th. To be less liable to side-slewing or slipping than any competing machine.

" 12th.   To operate successfully in difficult places.

" 13th.   To effect a saving of at least 75 per cent in the cost of building and repairing roads of over the old methods.

" 14th.   We warrant these machines to be free from imperfections in material and manufacture, and agree to make good any parts that may prove defective by reasonable usage, after a fair trial within one year.

" Geo. Tyler & Co.,                                 Boston, Mass."

Subsequent to this, but on the same day, some parties on the east side of the city expressed a desire to have another road machine for that side, and after a conference among the representatives of the city, the mayor directed Mr. Brooks by telephone to sign a second order for another road machine of the same kind ; it being arranged with Mr. Piers that the price for the two machines should be two hundred and thirty-five dollars net, f. o. b. boat at Boston, which would be a discount of six per cent provided the payment was made within ten days. Mr. Brooks signed the second order under the direction of the mayor in the name of his firm, but it was understood at the time between the mayor and himself that he did this in behalf of the city and there was no dispute between the parties that this was the fact.   Mr. Piers sent both orders on to his firm in Boston by mail that same night and they were received in Boston on April 3d.

On the same day the machines were delivered by Tyler & Co. to the Kennebec Steamboat Co. at their wharf in Boston to be shipped by the first boat to Augusta.   The first boat left Boston on Saturday, April 14th, arriving in Augusta the following day, April 15th, and the two machines reached Augusta at that time. On arrival in Augusta they were taken by the city authorities and removed to the east side of the river.   It was the understanding, when the sale was made, that if two machines were taken, the plaintiffs should send some one to set up the machines and start them without expense to the city.

After this purchase by the city, a representative of the Western Reversible Machine Co. came to Augusta and saw the authorities with relation to showing them one of his machines

and about the 20th of April brought one of his machines from Portland to Augusta for the purpose of showing its workings to the city authorities. About that same time one Mitchell, an employee of Tyler, Conant & Co. of Bangor, was sent by direction of the plaintiffs to set up and start the Champion machines, the plaintiffs having no idea that there was to be any competitive trial between the Champion and the Western. Both machines, however, were tried at the same time. Kimball, the representative of the Western operated his machine for a half day near the mayor's house and in the presence of the street commissioner, but the Champion was not used at all. On the subsequent day both machines were used, one by Kimball, and the other by Mitchell who came to set up the Champions, in the presence of a large number of people and the Western machine seemed to please the people better than the Champion. No word was sent by the city to the Boston house in regard to this decision, but Mr. Piers was in the city some time afterwards and the mayor told him that he had decided that the other machines were preferable, and had taken them and that his machines, the Champions, were subject to his order. Mr. Piers replied that the machines had been sold to the city and he should expect the city to pay for them.

Both Champion machines are still in possession of the city, never having been returned to the plaintiffs, and have not been paid for.

The defendant introduced evidence of the conversation at the time of signing the orders, claiming that it was admissible to show its acceptance and its terms; and contending that the orders were mere offers; that the defendant objected to buying a machine without seeing it operate; also that plaintiffs' agent said that unless it fulfilled the warranty on the back of the order, the city was under no obligation to take the machine. The defendant also introduced the circulars referred to in the order quoted above. The defendant declined to set up a claim in recoupment.

*Leslie C. Cornish*, for plaintiffs.

The written order with the warranty on the back and the cir-

cular, constituted the completed contract between the parties, and certainly there is no suggestion of any condition whatever in this.

The order for goods to be paid for in cash in ten days is hardly consistent with a conditional sale such as is claimed here.

The defendant and the plaintiffs are bound by the written contract which they themselves made and the warranties accompanying, and there is no warranty whatever as to perfect satisfaction : a very risky guaranty to be made in any trade.

The sale was absolute and unconditional but accompanied with the warranty set forth, and with the further warranty that the machine would do as claimed in the circular, this warranty to continue for the term of one year.

The sale not properly rescinded : *Conner* v. *Henderson*, 15 Mass. 319 ; *Henderson* v. *Sevey*, 2 Maine, 139 ; *Kimball* v. *Cunningham*, 4 Mass. 502 ; *Dorr* v. *Fisher*, 1 Cush. 274 ; *Thayer* v. *Turner*, 8 Met. 550 ; *Morse* v. *Brackett*, 98 Mass. 205 ; *Snow* v. *Alley*, 144 Mass. 546.

*H. M. Heath and C. L. Andrews, F. J. C. Little*, with them, for defendant.

Rejecting the oral contract, and confining the contract to the order and warranty upon the back of the order, we contend that, properly construed, the order is conditional. The paper offered is signed by the mayor alone. Nothing is offered signed by the plaintiffs. The paper is defendant's offer or proposition. The acceptance was in sending goods. Our offer, so made, was conditional.

It is immaterial whether the phrase is construed as a condition precedent to vesting of title, or a warranty. If condition precedent, plaintiffs must prove compliance or fail here. If warranty, we must prove breach and rescision before suit brought.

Before acceptance, the city had a right to test the machine to see if it would do as claimed in the circular.

The machine did not do as claimed for it in the circular. Defendants properly exercised their right of rescision. These facts as to the rescision are uncontradicted. The method was

ample.  Formal tender at any particular place or in any particular manner became unnecessary, when plaintiffs said they would not take them back, claiming that the sale was absolute.

If the machines were sold subject to their giving satisfaction, our right to rescind was clear, for they gave satisfaction to no one.

If the oral representations are to be rejected and the contract construed as a sale' with a warranty of quality, then, under *Marston* v. *Knight*, 29 Maine, 341, we had a right to rescind the contract and return the property as we did.

SITTING:  PETERS, C. J., WALTON, EMERY, HASKELL, WISWELL, JJ.

WHITEHOUSE, J., did not sit.

HASKELL, J.  Assumpsit for the price of two road machines. The defendant claims the contract of sale to have been partly oral and partly in writing, but the court considers the same to be wholly written.  The price was two hundred and fifty dollars per machine, delivered free of charge on board boat in Boston, discount for cash within ten days.  The machines were seasonably delivered to the carrier and received by the defendant.  The contract contained special warranty of excellence in quality and effectiveness in operation.  It is contended that the sale was conditioned upon the machines meeting the terms of the warranty, but the contention is unsound.  The sale became absolute upon the delivery of the machines to the carrier in Boston.  The title then passed to the defendant and the machines became its property and the purchase money became due.  If the machines did not meet the terms of the warranty, the defendant might rescind the sale and return the machines to the vendor and become absolved from liability for the price of them. Nothing short of a return of the machines, or an offer to return them and a refusal to receive them by the vendor, would so operate. There must be actual restoration or its equivalent.  *Norton* v. *Young*, 3 Maine, 30; *Marston* v. *Knight*, 29 Maine, 341; *Houghton* v. *Nash*, 64 Maine, 477; *Sharp* v. *Ponce*, 76 Maine,

350; *Downing* v. *Dearborn*, 77 Maine, 457; *Snow* v. *Alley*, 144 Mass. 551; *Morse* v. *Woodworth*, 155 Mass. 249.

Sometime after the machines had been received, defendant's mayor met the agent of plaintiff and told him: "We decided that the other machine [a machine of other manufacture] was preferable and had taken the other machines and that his machines were subject to his order." Ques. "The plaintiffs refused to take them back, did they?" Answer. "Yes." On cross-examination he testifies, in substance, that plaintiffs' agent claimed that the machines had been sold to the defendant and that the plaintiffs would collect the purchase money if they could.

The plaintiffs' place of business was in Boston. The machines were sold there. There is where they must be returned if defendant would rescind the sale. Notice that the machines were subject to plaintiffs' order in Augusta is neither a return nor an offer to return them; and a refusal to receive them there might well be made. The refusal to take them relates to the place where they were tendered, in Augusta, where plaintiffs were not bound to take them. Had the offer been to return the machines to the plaintiffs in Boston, may be they would have been received. Until they were confronted with a legal offer of rescission, plaintiffs were not required to reject the machines at their peril. The sale was not rescinded, and therefore this action for the purchase money may be maintained.

The defendant might recoup the damages sustained, if any, for breach of plaintiffs' warranty of the machines if it had elected so to do; but its counsel, at the bar, and in his brief, declines, preferring to rely upon his action to that end. He admits that the plaintiffs are entitled to recover their whole claim if entitled to recover any of it. The discount for cash in ten days is not available to the defendant here.

*Defaulted.*