H. B. LAKE, Appellee, v. WESTERN SILO COMPANY, Appellant.

VENUE: Domicile or Residence of Parties—''Office or Agency.''
1 When a corporation, company or individual has an office or agency in any county for the transaction of business, any actions growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located, even though the agent has no permanent office—no *room* in which he offices.

Note: Analogous holdings classified in index in Volumes 168, 169, under ''Process;'' in Volume 171, under ''Venue.''

SALES: Rescission—Rescission by Vendee—Measure of Damages. A
2 vendee who has rightfully rescinded a contract of sale may demand the complete restoration of the *status quo*, (a) by the return of the purchase price paid, and (b) by the return of any expenditure made by him *which was contemplated by the contract.* So held where the purchaser of a silo was permitted to recover his expense in erecting the same, the cause for rescission not appearing until the erection was almost complete.

SALES: Rescission—Conditions of Rescission—Return or Offer to
3 Return—Refusal to Receive—Pleading. Vendor's refusal to receive back the subject of a sale, on vendee's declared rescission, renders unnecessary any formal offer by vendee to return, and renders unnecessary any form of pleading in reference to returning, especially where, under the contract, the title still rested in vendor, and where the place at which vendee received the property was not a place to which vendee had a right to return it, to wit, depot grounds.

PRINCIPLE APPLIED: Plaintiff purchased of defendant, and in part paid for, a silo, under agreement that the staves should be full length—36 feet. *Title and right to reclaim possession for unpaid installments remained in defendant.* Missing parts, if any, were to be supplied by defendant. The silo was shipped to plaintiff in a knocked-down condition. Plaintiff hauled it from a car, at the depot, to his farm, a distance of 80 rods, and later, with the defendant's agent, proceeded to erect it. Six staves were missing. Defendant was notified. He did not send full-length staves, but sent 24- and 12-foot lengths. Plaintiff refused to accept the silo, *but did not return it to the depot.* He told the agent that "they could take it" and that "the silo was there subject to defendant's order." Later, plaintiff's attorney notified defendant that "the silo was on plaintiff's farm, subject to defendant's risk." *In reply, defendant, in effect, refused to take back the property.* In an action to recover the amount paid, plaintiff, on the subject of return or offer to return, simply alleged the above notification. *Held,* no tender or offer to return, in addition to the above, was necessary.

**SALES: Rescission—Belated Rescission—Reasonable Time.** Rescis-
4  sion is barred by an unreasonable delay. Evidence reviewed, and held not to show such delay. So held where, in June, vendee purchased and received a silo in a knocked-down condition, stored it until September, and then, in attempting to erect it, discovered that it was incomplete.

*Appeal from O'Brien District Court.*—WM. HUTCHINSON, Judge.

THURSDAY, JUNE 29, 1916.

REHEARING DENIED SATURDAY, SEPTEMBER 30, 1916.

ACTION to recover the amount paid by plaintiff for a silo which he purchased from defendant. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Guy A. Miller* and *O. H. Montzeimer*, for appellant.

*Herrick & Herrick*, for appellee.

DEEMER, J.—In June of the year 1912, plaintiff purchased from defendant, through its agent, one Tjossen, a resident of O'Brien County, this state, one silo, known as

the Champion, to be delivered to him (plaintiff) at the town of Gaza in said county. The contract was in writing, and consisted of an order, signed by plaintiff, and accepted by defendant, for "one" silo: diameter, 18 feet; height, 36 feet; material, fir; price, $445; full length stave, free from knots; freight allowed. The order also provided:

"If, upon receipt of silo, any part or parts are found defective or missing, I will at once notify the Western Silo Co. in writing, and give them reasonable time to replace all such parts, and at such time as such replacements are made, their responsibility ceases. This order can only be cancelled by purchaser sending the Western Silo Co. draft for 25 per cent of the purchase price, before shipment is made."

The silo was shipped "knock down," and was received by plaintiff, at the railway station in Gaza, early in June of the year 1912, and taken by him to his farm, which was about one quarter of a mile from the town of Gaza, and there carefully stored in a barn, where it remained until about the 8th or 10th of September of the same year. In the mean-time, and about September 1st, plaintiff paid a note, which he had given for the purchase price of the silo. About the 8th of September, plaintiff concluded to set the silo up; and so, with the help of defendant's agent and three or four other men, a concrete foundation was built, and, in assembling the staves, it was found that not enough were sent to complete the circle, there being six short. Defendant's agent immediately went to the depot, and telegraphed the defendant to send the needed material. Instead of sending full-length staves, in response to this telegram, defendant shipped two-piece staves; that is, instead of 36-foot length staves, it sent 6, 12 feet, and 6, 24 feet in length, so arranged as to be spliced. These, plaintiff refused to accept, and he wired the defendant:

"I have not received what I bought in silo, and refuse same. Will draw on you for amount paid."

Plaintiff also notified defendant's agent that he refused

to accept the silo, and that, if the company did not furnish full-length staves, they could take their silo. The defendant never shipped any full-length staves, and plaintiff told the agent, about ten days after the attempt was made to set it up, that the silo "was there subject to defendant's order." Plaintiff expended something like $30 for labor and material, in attempting to erect the silo. He employed counsel to protect his rights, and, on or about October 10th, counsel notified defendant that the silo was at plaintiff's farm, subject to defendant's risk. This action was then commenced by plaintiff, to recover the amount paid, and the amount expended by plaintiff in attempting to set up the silo. Plaintiff did not return the materials he had received, to the depot where he got them. In his petition, he alleged:

He "did not discover that said silo was not complete, as represented by the said agent of the defendant, until an effort was made to erect the same, when it was discovered that the same was incomplete, and could not be erected in its then condition, and defendant was duly notified that said materials were held by plaintiff at its risk, and repayment of the amount paid for said silo was demanded. That both said letters are in the possession and under the control of the defendant."

The action was commenced in O'Brien County. Defendant appeared, and moved that the venue be changed to Polk County, its principal place of business. This motion was denied, and the case then went to trial on the issues joined, resulting in a verdict for plaintiff, in the full amount claimed by him.

I. It is claimed that the court erred in denying defendant's motion for a change of venue. Plaintiff relies upon the fact that defendant had an office or agency in O'Brien County,

1. VENUE: domicile or residence of parties: "office or agency."

out of which this transaction grew, and that the action was properly commenced in that county. It appears that one Tjossen, a resident of O'Brien County, was employed by

defendant to sell silos on commission; that he took many orders for silos in said county, and assisted the purchasers in the erection thereof. Several were delivered on such orders, at the time plaintiff received his silo. True, the agent had no permanent office in said county,—that is to say, no room in which he officed,—but he was defendant's agent for the purpose of soliciting orders, not only in O'Brien, but in other counties, and he took plaintiff's order for the particular silo in question. Under Code Section 3500, as construed by this court, the action was properly commenced in O'Brien County, and the court did not err in denying the motion for change of venue. See *Milligan v. Davis,* 49 Iowa 126; *Locke v. Chicago Chronicle Co.,* 107 Iowa 390; *Wood v. Rice,* 118 Iowa 104; *Gilbert v. McCullough,* 140 Iowa 362; *Pleak v. Marks,* 171 Iowa 551.

II. The court instructed that plaintiff might recover, not only the purchase price paid, but also the expenses incurred by him in attempting to assemble the silo. This is said to be erroneous, because, upon rescission, a purchaser is entitled to recover nothing more than the purchase price, the contract being, by that act, out of the case, and insufficient to support a claim for damages. In this case, it was contemplated that plaintiff should incur expense in assembling and erecting the silo; and neither he nor defendant's agent, who was present, discovered the shortage in the staves until the foundation of the silo was laid, and the staves put in place. As plaintiff did not know the number of staves required, until he came to assemble the silo, and, as an ordinarily prudent man, was not bound to make this discovery, we think the trial court properly instructed that plaintiff might recover, not only the money paid, but the expense he was put to in attempting to erect the structure. *Mann v. Taylor,* 78 Iowa 355, tends to support this view. See also *Warren v. Mayer Mfg. Co.* (Mo.), 61 S. W. 644; 35 Cyc. 645

2. SALES: rescission: rescission by vendee: measure of damages.

and cases cited. The cases relied upon by defendant do not run counter to this view.

III. In various forms, it is contended that the court erred in permitting a recovery by plaintiff, for the reason that it was not alleged in the petition, or proved upon the trial, that he had returned, or offered to return, the silo, to the place where he received it. He received it at the depot in the town of Gaza, and hauled it to his farm, at least a quarter of a mile away, and he did not return it to the depot. Plaintiff does not expressly allege a return, or an offer to return the silo. The statement made by him was that defendant was duly notified that said materials were held by plaintiff at its (defendant's) risk. He proved that he told defendant's agent that he would not accept the silo; that they could take it; and that it was there (at the farm), subject to their order. The telegram which plaintiff sent the defendant has already been referred to; and this constituted no more than a refusal to accept the property. Defendant admitted, however, that it received a letter from plaintiff's counsel, before suit was brought, that the machine was there at its (defendant's) risk. Was this a sufficient tender, or offer to return the silo? The general rule is, that, if a buyer rescinds a contract of sale, he must return, or offer to return, all that he has received under the contract; and the tender, or offer, should be to return the property to the place where the property was received by the buyer; and, to make out a case for rescission, such tender must be pleaded, or an offer to return must be made in the pleadings. *National Imp. & Cons. Co. v. Maiken*, 103 Iowa 118; *Eadie v. Ashbaugh*, 44 Iowa 519; *Lunn v. Guthrie*, 115 Iowa 501; *McCorkell v. Karhoff*, 90 Iowa 545.

As the law does not require the doing of vain things, if the seller refuses to accept the goods when offered, or indi- cates a purpose not to rescind, if tendered, no formal tender is necessary. *Olson v. Brison*, 129 Iowa 604. There are some

3. SALES: rescis- sion: condi- tions of rescis- sion: return or offer to return: refusal to re- ceive: plead- ing.

other exceptions to this rule, which will be noticed hereafter. The trial court instructed with reference thereto, as follows:

"And if you find from the evidence that the defendant failed, refused and neglected to furnish sufficient material to complete the silo in question, in accordance with the terms of the written contract, and that the plaintiff complied strictly with all the conditions of the written contract, required of him by the written contract, in giving notice to the defendant of the shortage, if any, and in allowing reasonable time for defendant to furnish the material necessary, if any, and that defendant did not furnish it within a reasonable time, and if you further find that the plaintiff in this case gave notice to defendant that he rescinded the contract, and that the silo was at his premises subject to their order, then you are told that this, in law, would be a rescission of the contract in question. And the plaintiff would not be required to return the silo to the defendant."

In view of the nature of the contract between the parties, the following being stipulations not hitherto quoted:

"If, upon receipt of silo, any part or parts are found defective or missing, I will at once notify the Western Silo Co. in writing and give them reasonable time to replace all such parts, and, at such time as such replacements are made, their responsibility ceases. Title to goods ordered, and right to reclaim possession thereof for balance of purchase price, shall remain in the name of the aforesaid company, and, in case of suit, they shall be allowed reasonable attorney fees and any other costs incurred in prosecuting same. This order can only be cancelled by purchaser sending the Western Silo Co. draft for 25 per cent of the purchase price before shipment is made,"—

we are disposed to hold the instructions substantially correct. The defendant undertook, upon notice, to supply any missing parts; and it reserved title to the silo until paid for. It undertook to supply all the missing parts upon notice; and, until it did so, the contract was not complied with on its

part. It was notified of the missing parts, and a jury might have found that it did not supply them within a reasonable time. Failing in this, plaintiff wired defendant as indicated, and notified defendant's agent, who was upon the ground, that he would not accept the silo, and that it was there at his place subject to its (defendant's) order. Defendant had no warehouse or place of business at Gaza, and the silo was delivered to plaintiff from a railway car. The agent had no storeroom. Before commencing suit, plaintiff's attorney notified defendant that the silo was at plaintiff's farm, at their risk. In answer to this letter, defendant claimed that it had fully complied with the contract on its part, and insisted upon plaintiff's paying for the property. It said nothing about the return of the property, but indicated that it did not recognize plaintiff's right to rescind. Speaking to this proposition, the Supreme Court of Wisconsin, in a like case, said:

"Now, what, under the circumstances, was the defendant bound to do, assuming that his claim as to the defective character of the lumber was well founded? Was he bound to take the lumber back to the depot, and leave it there somewhere on the grounds? He surely would have no right to put the lumber on the depot premises without the consent of the company. If consent were given to the lumber's being placed on its grounds, it is evident the company would be under no obligation to take care of and protect it. It is plain that the lumber, at such a place, would be much exposed to fire and depredation. Was it the duty of defendant to hire someone to take care of the lumber while it remained on the depot grounds? We do not think the law imposed upon the defendant the duty, on discovering the defects in the lumber, of taking it back to the depot grounds, where he would have no right to leave it, and where it would necessarily be exposed to great danger. But he would discharge his duty in the premises by removing the lumber to some suitable and convenient place of his own selection, where it could be safely

kept for the plaintiff until the latter should pay the advanced freight charges and take it into his possession.'' *Rood v. Priestley* (Wis.), 16 N. W. 546.

In *Milliken v. Skillings* (Me.), 36 Atl. 77, 78, the court announces the rule, as follows:

''In *Noyes v. Patrick*, 58 N. H. 618, the idea is thus expressed: 'The party seeking to rescind must ordinarily restore, or offer to restore, whatever he has received under the contract; and, in case of the refusal of the wrongdoer to receive it, an offer to restore, properly made, is equivalent to actual restoration.' In the discussion of this question the word 'offer' is frequently used by courts and text writers as synonymous with 'tender,' and it may be properly so used with reference to articles capable of manual delivery and actually produced, as in *Luey v. Bundy*, 9 N. H. 298, it was said to be unnecessary to produce the notes and money in court. 'He had offered them to the defendant, who refused to receive them.' But with respect to heavy articles of merchandise, situated at a distance from the place to which they must be transported if restored to the vendor, the phrase, 'offer to return' is more commonly and more aptly employed to express a willingness or to make a proposal to rescind the contract and return the goods. It is not sufficient, however, for a buyer, who has taken delivery of the goods at the vendor's place of business, merely to express a willingness or make a proposal to return the goods, or simply to give notice to the seller that he holds the goods subject to his order, or to request him to come and take them back. If he would rescind the contract, he must return or tender back the goods to the seller at the place of delivery, unless, upon making the offer so to do, he is relieved of the obligation, as stated, by a refusal to receive them if tendered. *Norton v. Young*, 3 Me. 30; *Ayers v. Hewett*, 19 Me. 281; *Cushman v. Marshall*, 21 Me. 122; *Stinson v. Walker*, 21 Me. 211; *Tyler v. City of Augusta*, 88 Me. 504 (34 Atl. 406).''

There was, in the case at bar, a denial of plaintiff's right

to rescind, and a statement, in effect, that it would not take the property back. Not only this, but defendant failed to comply with its agreement to supply proper

**4. SALES: rescission: belated rescission: reasonable time.**

missing parts, which was a condition precedent to the passage of title, and not a warranty; and in such case, all that plaintiff was required to do was to indicate his nonacceptance of the property, for defendant's failure to comply with these conditions. Under the circumstances disclosed, there was no such delay on plaintiff's part in calling for the missing parts as will deprive him of his right to rescind, or estop him from claiming that the defendant did not perform its agreement. *Westinghouse Co. v. Gainor* (Mich.), 90 N. W. 52, 55; *Briggs & Lucas v. Rumely Co.*, 96 Iowa 202, 208.

On the whole record, we find no error, and the judgment must be, and it is,—*Affirmed*.

EVANS, C. J., PRESTON and SALINGER, JJ., concur.