. BLACK v. DE CAMP *et al.*

1.   **Contract:** NOVATION: WHAT IS NOT. Defendants had contracted to deliver to plaintiff a certain number of ponies, for which plaintiff had paid them in advance at the rate of forty dollars per head. Afterwards, and before the ponies were delivered, plaintiff sold some of them to W., and gave to W. a written order, directed to defendants, and requesting them to deliver certain of the ponies to W., and to charge the same to their contract. The order closed

with these words: "I also agree that, on failure of delivery of any or all, the price to be paid the deficiency shall be thirty-five dollars per head." Defendants accepted the order. *Held* that there was no novation, but that for a failure to deliver defendants were liable to plaintiff under the contract, the same as if the order had not been made and accepted.

2. ———: ASSIGNMENT: DISCHARGE OF SURETY. Where in such case the defendants gave their promissory note to plaintiff, signed also by another as surety, to secure the faithful performance of the contract to deliver the ponies, *held* that the order, and acceptance thereof, for the delivery of the ponies to W. was not a material change in the contract, and did not operate to discharge the surety on the note.

3. ———: FAILURE TO DELIVER PROPERTY PAID FOR: MEASURE OF DAMAGES. In such case, the measure of plaintiff's damages for defendants' failure to deliver the ponies was the price paid for them, with interest, and not the amount which plaintiff was to pay his vendee in case of a failure to deliver.

4. **Promissory Note:** ATTORNEY FEE: RECOVERY: DEFECTIVE AFFIDAVIT. Although the affidavit for the recovery of an attorney fee provided for in a promissory note sued on is not in all respects in accord with the statute, yet if it is such that the trial court can fairly find therefrom the facts necessary to a lawful allowance of the fee, and it makes the allowance, this court cannot interfere to set it aside.

*Appeal from Marshall District Court.*—HON. JOHN L. STEVENS, Judge.

FILED, OCTOBER 29, 1889.

ACTION upon a note given as collateral security for the performance of a contract to deliver a certain number of Texas ponies. From a judgment for plaintiff the defendants appeal.

*Scott & Clute* and *J. L. Carney*, for appellants.

*J. F. Meeker*, for appellee.

GRANGER, J.—This court has, to some extent, construed the contracts involved in the issues on this trial on a former appeal. The opinion is to be found in 75 Iowa, 105. On the sixth day of January, 1886, the plaintiff entered into a contract with J. W. Blackwood and E. De Camp, as follows:

"MARSHALLTOWN, IOWA, Jan. 6, 1886.

"This contract and agreement, entered into this day between John W. Blackwood and E. De Camp, of the first part, and John S. Black of the second part, is to certify that the party of the first part, in consideration of two thousand dollars ($2,000) paid by the party of the second part, the receipt of which is hereby acknowledged, agrees to deliver to the party of the second part fifty (50) head of Texas ponies, thirty (30) head to be mares and twenty (20) to be geldings, to be from three (3) to six (6) years old, and from thirteen (13) to fifteen (15) hands high, and sound and smooth. Colors to be black, bay, roan and gray, and said horses to be in good, healthy condition when delivered here. And said party of the first part agrees to deposit two thousand dollars ($2,000) in notes as collateral security.

"J. W. BLACKWOOD & E. DE CAMP,
"JOHN S. BLACK."

On the same day a note was executed to plaintiff, as follows :

"$2,000. MARSHALLTOWN, IOWA, Jan. 6, 1886.

"On or before July 15 after date, for value received, we promise to pay to the order of John S. Black, at Marshalltown, Iowa, two thousand dollars ($2,000), with interest from date until paid at the rate of ten (10) per cent. per annum after due, payable annually, and a reasonable attorney's fee if suit be instituted on this note. It is hereby understood and agreed that this note shall become null and void upon the delivery of fifty (50) head of Texas ponies, as per contract bearing even date herewith, to John S. Black; it being understood that this note is given as collateral security for the faithful discharge of said contract.

"J. W. BLACKWOOD & DE CAMP,
"M. DE CAMP."

On the twenty-third of the same month another contract and note, of like import, were executed between the same parties, except that the contract was for the delivery of twenty-five ponies for the consideration of one thousand dollars, and the collateral note

was for one thousand dollars instead of two thousand dollars. The ponies thus contracted for were by the plaintiff sold to three different parties,—thirty to one, twenty-five to another and twenty to the other. To one of the purchasers, N. W. Wood, was given an order as follows:

"January 12, 1886

"*John W. Blackwood & E. De Camp:*—Please deliver to N. W. Wood, or order, thirty (30) head of sound Texas ponies on or before July 15, 1886, seventeen (17) head to be mares and thirteen (13) head to be horses, all to be from three (3) to six (6) years old, and from thirteen (13) to fifteen (15) hands high, and charge the same to our contract of January 6, 1886. I also agree that, on failure of delivery of any or all the price to be paid, the deficiency shall be thirty-five ($35) per head.

"JOHN S. BLACK."

J. W. Blackwood and E. De Camp each endorsed the order by writing his name across the face. A like order was given to each of the other purchasers. There was a failure to deliver the ponies, and the plaintiff, having paid to his vendees thirty-five dollars each for the ponies to be delivered, brings this action on the collateral notes above referred to.

The defense urges that the acceptance of the orders for the delivery of the ponies to the purchasers from the plaintiff was a satisfaction of the plaintiff's claim as against defendants, and their release as to him. In the former appeal the orders for delivery were not in the case, but the contract of sale and the collateral notes were, and the two were held to be parts of the same contract; that the collateral note was in the nature of an indemnity, on which M. De Camp was a surety, he not being a party to the original contract.

I.   We first notice the point as to the legal effect of the acceptance or endorsement by Blackwood and De Camp of the order. Appellants, in argument, place much stress upon the fact that the orders accepted provide for the

1. CONTRACT: novation: what is not.

payment of thirty-five dollars each for the ponies on failure of delivery, and it is their construction that by the acceptance of the orders they assumed such payment, which worked a change in the contract, and operated to discharge the first contract. We are not referred to an authority, nor do we know of one, that would sanction the construction urged. It is true, the contract of sale did not fix a price to be paid for a failure of delivery, but it, in legal effect, did provide for a payment of the value of the property, and the new contract does no more, except that it fixes the value instead of leaving it for after determination. The unmistakable facts are that plaintiff bought the ponies of Blackwood and De Camp, to be delivered, and then sold them to other parties for future delivery, and gave a direction or order to his vendors to make the deliveries to his vendees, and agreed that if his vendors failed to make the delivery he would pay thirty-five dollars for each pony not delivered, and, accepting plaintiff's instruction, plaintiff's vendors agreed to pay such price if they failed in delivering. The accepted order also provided that the deliveries or payments by Blackwood and De Camp should be applied to the discharge of their obligation to the plaintiff. The accepted order is susceptible of no other construction. Its language is to deliver the ponies, etc., and charge the same to our contract of January 6, 1886. Such language is entirely inconsistent with the idea of supplanting the former contract. It is a plain acknowledgment of its continued existence. For as many ponies as were delivered, or payments therefor made, the defendants were entitled to charge the same to plaintiff and receive credit on their credit with him. Neither the accepted order nor the testimony in the case tends to show that there was a thought that plaintiff was not, after the acceptance of the order, liable for any default of the acceptors. The contrary is clearly apparent. The contract has not the essential requisites of a contract of novation. The claim of appellant has no support in the cases of *Foster v. Paine,* 63 Iowa, 85, or *Lester v.*

*Bowman,* 39 Iowa, 611. It is urged that under the contract, by virtue of the accepted order, the defendants might have been subjected to three separate suits for its performance, and hence that it is a different contract. It is true that in some respects the order and acceptance made the contract different, but the fact of such difference would not cancel their obligation to the plaintiff. In this respect we are speaking of the obligations of Blackwood and E. De Camp.

II. M. De Camp was a surety on the collateral notes, and it is urged especially in his behalf that the

2. ——: assign- ment: dis- charge of surety.

change in the contract was such as to release him from liability. In this respect the question is one of greater doubt. We are now to inquire if any material change of the contract was made by the order. In the former division of the opinion, for the purpose of argument, we treated the agreement in the order as to the payment of the thirty-five dollars per head for ponies not delivered as binding on the acceptors, but it was only for argument, as we do not believe such to be the legal effect of the instrument. The names across the face of the order have been treated in argument as an acceptance, and we do not see why not properly so. It is, then, a question of what the acceptance imports. It is a mere undertaking to comply with the requests or directions in the order. The directions in the order, as to the acceptors, are only to deliver the ponies to certain persons. The plaintiff is a party to the instrument, and it is signed by him and delivered to the purchasers, and it contains this provision: "I also agree that, on failure of delivery of any or all, the price to be paid the deficiency shall be thirty-five dollars per head." This was a mere undertaking by the plaintiff that if the ponies were not delivered under the order he would pay the thirty-five dollars per head. By the acceptance the acceptors undertook to perform the orders to them, and not an agreement by the plaintiff. Is the undertaking to deliver the ponies to the purchasers from plaintiff a material change in the contract? We think not. Let

us look at its legal effect. There is no change as to the place or time of delivery. In effect, by the sale of plaintiff to Wood and others, the ponies on delivery were to be theirs. The order was merely authority for their receipt and delivery, and the acceptance was a mere undertaking to deliver to the assignee of plaintiff instead of to him. The plaintiff had the right to transfer his interest in the contract for the delivery of the ponies, and upon notice to Blackwood and De Camp it was their duty, at the time and place specified in the contract, to respect the rights of the purchasers, and deliver the ponies to them. It could not be reasonably urged that such a transfer by the plaintiff would discharge the surety. Such a right and duty would be a legal incident to the contract first made. It would be no change. The acceptance of the order by writing the names is not different in its legal effect. It was a mere expression of their obligation to deliver to the assignee of the plaintiff instead of to him. The books abound with cases on the subjects of material changes in contracts and the release of sureties, but our attention has not been called to one, nor with much research do we find a case, to justify a holding that a mere agreement to deliver to the assignee of a purchaser is such a change as would release a surety. It is not essentially different in principle from the transfer of a non-negotiable instrument for the payment of money, if a surety should claim a release from his obligation for payment merely because of its transfer. Some confusion as to principle has arisen from the consultation of authorities bearing on the question of alterations on the face of written instruments, which in many respects are governed by an entirely different rule of law.

III. The court instructed the jury that the measure of plaintiff's damage was the fair and reasonable market value of the ponies at the time 3. ——: failure to and place for delivery, and appellant com- deliver prop- erty paid for: plains and urges that the thirty-five dollars measure of damages. which plaintiff paid to his purchasers was the true measure of damage. Under the rule given by

the court the jury assessed the damage on the basis of forty dollars as the value of each pony. The record shows that such was the price fixed by the parties when plaintiff made his purchase. The plaintiff's damage was the amount he paid, with interest thereon. Under the rule given by the court exactly the same result was reached, and no prejudice could result. The liability of the defendants is not to be measured by the fact of whether plaintiff gained or lost in his transaction with others.

IV. Quite a number of assignments are based on the admission and rejection of testimony. During the progress of the trial the issues were somewhat changed by striking from the pleadings, and, following this, much of the testimony was excluded or stricken out on motion. The issues embraced many questions not pertinent to the case under our holdings as to the legal effect of the instruments. In fact, with such holdings, there must be a conceded liability of both defendants on the contract. The contract and default in delivery are admitted. This practically leaves but the question of amount of damage, under the rule of ascertainment as held by the court, and as the result was an absolutely correct one there could be no prejudice.

V. The note provided for an attorney's fee in case of suit. The court allowed $70.85. The allowance is assigned as error on the ground that no sufficient affidavit was filed. The affidavit filed was made by an attorney in the cause, and did not fully contain the requirements of the statute by stating every fact provided for, but we think it did state facts from which the court below could reach a conclusion that there was no agreement for an unlawful division of fees. If it was an affidavit from which the court could find the necessary facts, we cannot, in this case, reverse or set aside its finding merely because we might think otherwise. The fact of the court's making the allowance shows that from the affidavit it was satisfied there was no unlawful agreement. In the case of *Wilkins v. Troutner*, 66 Iowa,

*4. PROMISSORY note: attorney fee: recovery: defective affidavit.*

557, and *Sweney v. Davidson*, 68 Iowa, 386, there was no affidavit filed as required by law, and there was an absence of all evidence, and hence the court could not be satisfied by affidavit of the necessary facts. Because of our construction of the contracts it is unnecessary to consider other questions argued.

AFFIRMED.