William Canavan and J. V. Patton, trading as William Canavan, Appellants, *v.* A. D. Neeld and Patrick Foley, trading as Neeld & Foley.

*Contract—Breach of contract—Measure of damages.*

Plaintiffs entered into a contract with the defendants to furnish stone for a bridge which the defendants were building under a contract with the city. Plaintiffs' contract stipulated: "In case the said first party fails to furnish suitable stone as fast as mentioned above, the second party may purchase the deficiency, paying therefor open market rates, and charging

said first party with any additional costs there may be." Under the municipal contract the stone was required to be of a uniform color. Plaintiffs having failed to deliver, defendants attempted to buy stone in the open market, but stone of the color required being limited in supply, they were met by exorbitant demands. They opened a quarry of their own, which they operated for a short time, when they were able to obtain the stone at reasonable rates from dealers. They then closed their quarry. The stone, both that quarried and the greater part of that purchased, cost more than the contract price. *Held*, (1) that under the circumstances of the case the defendants had a right to quarry the stone from their own quarry, if they did not charge more for it than the stone could have been purchased for in the open market; (2) that the words " failed to furnish suitable stone as fast as " required, meant that in no event was the partial or total failure of plaintiffs to work an interruption to defendants in completing their contract, but that they should have the right to at once go in to the market and purchase, and that they were not restricted to this single item of damages, but had the right to claim other damages which were the direct consequences of plaintiffs' broken contract in this particular.

Argued Nov. 10, 1898.    Appeal, No. 188, Oct. T., 1898, by plaintiffs, from judgment of C. P. No. 3, Allegheny County, Aug. T., 1897, No. 276, on certificate for defendants.    Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Assumpsit on a contract for stone sold and delivered.
The facts appear by the opinion of the Supreme Court.

The court, KENNEDY, P. J., charged in part as follows:
[ But the defendants claim that this, exhibit " A," was the contract in existence between them, and claim further a large amount of damages by reason of the failure, upon the part of the plaintiffs to perform their contract. They first say that, on account of their failure to furnish them with the stone, in accordance with the terms of the contract, and at the times agreed upon, they were compelled to go into the market and buy stone, for which they had to pay a much larger price than that agreed upon with the plaintiffs for the furnishing of the stone ; and that excess in price exceeds largely, by some $1,600 or $1,800, the claim of the plaintiffs for the stone furnished.] [5]
[In addition to that, the defendants claim that other damages resulted to them by reason of the plaintiffs' failure to per-

form the contract; the damage resulting to the machinery which they were required to provide and keep there for the building of this bridge, and the expenses of keeping in proper condition that machinery and other property there, while it was lying idle, by reason of the failure on the part of plaintiffs to perform their part of the contract to furnish the stone, and for other reasons they were damaged to a large amount of money, to wit: many thousands of dollars. They claim these, in addition to the amount which they claim to have paid for stone that they actually did get, in excess of the contract price with the plaintiffs.] [6]

[In addition to that, they ask you for damages in many thousands of dollars, resulting to them from the failure upon the part of the plaintiffs to perform their contract and deliver all the stone needed for the construction of this bridge, and at such time or times, as they agreed to by the contract, as claimed by the defendants. Those, then, are the important questions for your determination.] [7]

[In addition to this they say, finding that they were not able to purchase stone sufficient for the completion of their contract with the city, they opened a quarry of their own, and sought to obtain the stone in that way, and they ask you to allow them the difference in the cost of that stone, and the price of the stone as contracted for with the plaintiffs. . . . If, however, the cost of obtaining the stone by that means, the opening of their own quarry, was the same as that at which they could purchase it in the open market at the time, and that greater than the contract price with the plaintiffs, then they would be allowed that difference.] [8]

[You will first determine what the contract was, and if it was, as claimed by the defendants, and as stated in this written memorandum, then you will consider carefully what amount of damage the defendants have suffered by reason of the failure, if any, on the part of the plaintiffs to perform their contract, and offset that against the plaintiffs' claim here. If the amount of damage exceeds the claim of the plaintiffs, you will certify a balance for the defendants for whatever amount you find their damage to be in excess of the plaintiffs' claim.] [9]

Certificate for defendants for $1,267.41, upon which judgment was entered. Plaintiffs appealed.

*Errors assigned* among others were (5–9) above instructions, quoting them.

*J. B. Chapman,* with him *J. W. Lee,* for appellants.—When plaintiffs quit furnishing stone, if defendants desired to enforce the contract against plaintiffs for failure to furnish the balance of the stone, it was incumbent upon them to purchase or contract for the purchase of the stone remaining undelivered at this time, and if the stone was then purchased at an advanced price plaintiffs were liable: Arnold v. Blabon, 147 Pa. 372; Hadley v. Baxendale, 9 Exchequer Rep. 341; Wire v. Foster, 62 Iowa, 114.

*Henry A. Davis,* and *Wm. M. Galbraith,* for appellees.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:

The defendants in July, 1896, entered into a contract with the city of Pittsburg to build and complete within ten months what is known as the Schenley Park bridge. Preliminary to commencing the work, they contracted with plaintiffs to furnish all the stone necessary for it, of certain dimensions and quality, in accordance with the plans and specifications of the director of public works of the city, and subject to his inspection and approval; the delivery to commence July 25, 1896, and continue at a weekly average of quantity, the whole to be on the ground by September 15, 1896. This contract although drawn as stated, was not actually signed by the parties; the plaintiffs rather feebly denied it to be the contract, and although they admit that a copy was delivered to them, and they followed its specifications, yet they alleged instead of all the stone for the bridge, they were only to deliver such quantity as could reasonably be taken out at their quarry; but the weight of the evidence was clearly against them on this point, and it having been submitted to the jury, they have found the unsigned instrument embodied the contract. We therefore assume it to have been the contract. It contains this stipulation:

" In case the said first party (Canavan) fails to furnish suitable stone as fast as mentioned above, the said second party (Neeld & Foley) may purchase the deficiency, paying therefor open market rates, and charging said first party with any additional cost there may be."

It was averred by defendants and not denied, that plaintiffs had failed to perform their contract as to delivery of the quantities within the time named. Defendants protested against this violation of the contract, and notified plaintiffs to deliver, even after the expiration of the time, but they closed their quarry and made no further deliveries. Defendants then leased, opened and operated a quarry of their own, from which they obtained a considerable quantity of stone, and besides, purchased largely from other parties to complete their contract with the city. They averred, the stone quarried by themselves, as well as a large part of that purchased, exceeded in cost the price to be paid plaintiffs; besides they averred plaintiffs' default had imposed upon them greatly increased expense, because of the delay in completing their work. Plaintiffs sued for the contract price of the stone delivered about $2,000; defendants claimed to offset the damages occasioned directly by the breach of contract. On the issue thus framed, the case was tried. The court instructed the jury that on plaintiff's default, defendants had the right to go into the market and purchase stone at the market price, and hold defendants answerable for the difference between that and the contract price. And further, if the market could not supply them with sufficient stone they had the right to open and work their own quarry to make up any deficiency, and if the cost of quarrying exceeded the contract price, plaintiffs were answerable for the difference up to a cost not greater than the market price. Under the instructions the jury certified a balance in favor of defendants, and plaintiff appeals assigning nine errors.

The burden of appellants' complaint is set out in the fourth to ninth, inclusive, assignments of error; these all allege, that assuming the unsigned writing to be the contract, the court adopted a construction of it not warranted by its terms, and not in accord with the intention of the parties. It is, in substance, argued that but one particular default was contemplated, the failure to furnish all the stone, and that for this but one measure of damage was expressly provided, and that was the difference between the contract price of delivery and the open market price.

In interpreting this clause of the contract, we seek the intention, not alone from the exact words, but from what should be

reasonably implied from the undisputed circumstances existing at the time, and which necessarily must have operated on the minds of the parties. It was well known to both, that the stone must be of uniform color, otherwise the city inspector might reject it, hence the desirability of obtaining the entire supply from one particular quarry; for whatever sameness might exist as to quality of the stone, in the same region, there might be quite a difference in color. And while the law would, without the insertion of this clause in the contract, have implied it, yet as if to add to the obligation of the plaintiffs, defendants exacted an express stipulation in the nature of a penalty which they thought would guard against default; they wanted the particular product of this one quarry delivered weekly. They proceeded with the work on the bridge, and built into about three hundred cubic yards of stone furnished by plaintiffs, when in face of the penalty, plaintiffs ceased deliveries. Defendants then as provided in the contract go into the open market to purchase building stone; not any kind or color, but such as would harmonize with that already in the walls, for none other would pass inspection. Necessarily, the market was somewhat limited. In attempting to purchase suitable stone, defendants found, either from quarrymen's knowledge of their necessities, or a combination to uphold prices, that they could not purchase, except at a price largely in excess of the contract price with plaintiffs. Instead of purchasing at what they deemed an excessive figure, in which they would have been justified by the literal words of the contract, they opened their own quarry and procured a considerable quantity of stone; then, other quarrymen who had demanded a large price, offered to furnish the stone at a much less one, and defendants accepted their offer. As there was now no necessity for continuing the operations at their own quarry, they closed it, and supplied themselves by purchase. There is no evidence that defendants did not act with good faith; their conduct under the circumstances was clearly to the advantage of plaintiffs. The stone, both that quarried and the greater part of that purchased, cost more than the contract price; but on the evidence submitted the jury has found that defendants procured it at as low a price as they could.

Plaintiffs argue, that under the contract defendants had but

one course open to them, to go into the market and purchase the stone; that by opening their own quarry, they adopted a method unknown to the contract, and it must be assumed there is no warrant for charging them for these stone other than the contract price. We think such a construction altogether unreasonable. The open market price for suitable stone when plaintiffs made default was for one specification, $2.00 per yard more than the contract price, and seventy-five cents per yard more for another; defendants considered this extortion, and would not buy; but they must have stone, so they leased and operated their own quarry for about six months, then the dealers came down in price, and they actually bought considerable quantity at less than the contract price. Defendants admitted that the comparatively small quantity obtained from their own quarry cost a little more than the price asked by dealers when they opened the quarry; while they expected when they began work it would cost less. But the court plainly instructed the jury, that the plaintiffs were not chargeable with a higher price than the stone could be purchased for in the open market.

The reasonable construction of this clause, is that put upon it by the court below; that is, it measures the damages for plaintiffs' default in this particular at a sum not exceeding the difference between the open market price and that specified in the contract; it might be less than this, but not more. The words "fail to furnish suitable stone as fast as" required by the agreement, meant that in no event was the partial or total failure of plaintiffs to work an interruption to defendants in completing their contract, but that they should have the right to at once go into the market and purchase. It did not restrict defendants to this single item of damages, but left open to them the right to claim other damages, which were the direct consequences of plaintiffs' broken contract in this particular.

From the evidence in their whole conduct, it is highly probable defendants' business methods saved to plaintiffs more money than they saved for themselves. Appellants certainly have no grounds for complaint. There is nothing of merit in the other assignment of error.

The judgment is affirmed.