McKINLEY v. SMALL.

1. SALES—BREACH OF WARRANTY—BILLS AND NOTES—EVIDENCE.
    In an action on a promissory note, defendants claiming damages for breach of warranty of a stallion, which proved impotent, according to defendants' evidence, testimony on plaintiff's behalf that the horse was made weak by sickness and improper care, while in the hands of the defendants, raised an issue of fact that should not have been taken away from the jury.

2. SAME—TRIAL—CHARGE.
    Where there was evidence that the horse was defective when he was delivered, and not such an animal as the plaintiff had warranted, the defendants were entitled to have the question submitted to the jury under instructions that if the jury found that the horse was not sexually defective when he was delivered, and his failure to meet the terms of warranty was due to sickness and improper handling, plaintiff could recover on the notes.

3. SAME—RESCISSION—WARRANTY.

And when the defendants were not relying on a rescission, but on the contract of warranty, which required the vendor to replace the horse if he did not conform to the provisions of the warranty, the court was in error in holding that defendants could not defeat the plaintiff's action on the note for the reason that there had been no rescission and return of the stallion.

Error to Newaygo; Barton, J. Submitted January 7, 1916. (Docket No. 61.) Decided December 21, 1916.

Assumpsit by John McKinley against Fred L. Small and others on promissory notes of defendants. Judgment for plaintiff on a directed verdict. Defendants bring error. Reversed.

*Warner, Raudabaugh & Person,* for appellants.

*George Luton* and *William J. Branstrom,* for appellee.

BIRD, J. This case was before this court on a prior occasion, and reversed because of the failure of the trial court to submit to the jury a certain question of fact. 178 Mich. 555 (146 N. W. 230). A retrial has been had, and it is here again for review. The main issue in the first trial was whether plaintiff should recover against defendants on a certain promissory note given by them for a Percheron stallion. The defendants resisted the payment on the ground that the plaintiff had not lived up to his warranty of the horse. The warranty was as follows:

"We guarantee the above named horse to be a reasonably sure foal-getter and transmitter of sixty per cent. of good producing mares owned by the above-named stockholders, provided he shall have plenty of exercise and proper feeding and grooming, care and handling, and in case he should not prove so, we agree

to replace him with another of the same breed and price, upon the delivery to us of the above named horse in as sound and good condition as he is at present."

The defendants offered testimony tending to show that the horse was sexually impotent when he was delivered to them; that they notified plaintiff of the fact, and demanded another horse; that later they returned the horse to him; but that he never replaced him with another, in accordance with the contract.

Plaintiff replied to these contentions by introducing both lay and expert testimony that, if the horse were sexually weak, he was made so by sickness, improper care and handling after he was purchased by defendants. The testimony on this question clearly made it one of fact.

Another contested question on the first trial was whether the redelivery of the horse to plaintiff was a valid delivery, under the contract, and this court held in its former opinion that the redelivery was a valid one. The only question then which was open on the first trial was whether the horse measured up to the warranty when he was delivered to defendants. This was likewise the issue on the second trial. The testimony on this issue was along the same lines on the second trial, but there was more of it bearing upon the defects of the horse and the causes which produced them. This issue was again one for the jury, and should have been submitted to them. They should have been instructed, in substance, that, if they found the horse was sexually what the contract of warranty represented he should be when delivered to defendants, and that his failure afterward to measure up to the warranty in that respect was due to his sickness and improper handling after the defendants received him, plaintiff was entitled to recover the amount of his notes. On the other hand, if they found the horse

was sexually defective when he was delivered to defendants, and therefore was not such a horse as plaintiff had agreed in his contract of warranty to furnish them, the plaintiff was not entitled to recover.

On the second trial the court was of the opinion that there had been no rescission of the contract by the defendants, and therefore directed a verdict for the plaintiff. While the record shows some talk about rescission, the real issue made by the defendants' testimony was whether plaintiff had lived up to his contract of warranty in furnishing the kind of horse he had agreed to furnish. The defendants, in fact, did not rely on a rescission. They relied on the contract. They insisted upon plaintiff making good his contract of warranty, and from their viewpoint the thing he had to do to "make good" was to furnish them another horse that would satisfy the terms of the warranty. This was the measure of damages agreed upon in the contract, and was therefore binding. *Canavan* v. *Neeld,* 189 Pa. 208 (42 Atl. 115); 35 Cyc. p. 633; *Black* v. *De Camp,* 78 Iowa, 718 (34 N. W. 625); *Monroe* v. *Hickox, Mull & Hill Co.,* 144 Mich. 30 (107 N. W. 719); *Twin City Creamery Co.* v. *Godfrey,* 176 Mich. 109 (142 N. W. 362, 50 L. R. A. [N. S.] 805).

For the failure of the trial court to submit this question to the jury, the judgment must be reversed, and a new trial ordered. The defendants will recover their costs.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.