70 F.3d 1271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
G.P. RENFLO, INC., a Michigan corporation, Bernard H.
Stollman, Paul Zlotoff and Abraham Ran,
Plaintiffs-Appellants,
v.
RENAISSANCE BY LAKE IVANHOE, INC., a Florida corporation,
and Victor Eyal, jointly and severally,
Defendants-Appellees.
 No. 94-1823.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1995.
 
 Before: KENNEDY and MOORE, Circuit Judges; and POTTER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs G.P. Renflo, Inc., Bernard H. Stollman, Abraham Ran, and Paul M. Zlotoff appeal the order of the District Court granting summary judgment in favor of defendants Renaissance by Lake Ivanhoe, Inc. and Victor Eyal in an action for breach of a limited partnership agreement. The District Court found the agreement at issue unambiguous and controlling. Finding the agreement ambiguous, we REVERSE and REMAND for factual inquiry into the actual intent of the parties with regard to their limited partnership agreement.
 
 I. Facts
 
 2
 Renflo Limited Partnership ("Renflo"), a Michigan limited partnership, was established in 1989 and the parties to this suit are most of its partners.[1] Plaintiff G.P. Renflo, Inc., ("GP Renflo) and defendant Renaissance By Lake Ivanhoe, Inc. ("Renaissance") are the general partners in Renflo. Plaintiffs Bernard H. Stollman ("Stollman"), Paul Zlotoff ("Zlotoff") and Abraham Ran ("Ran") are so-called "special" limited partners, who, along with GP Renflo, are collectively known as the "GP Renflo Group." Defendant Victor Eyal ("Eyal") is also a "special" limited partner, the sole limited partner in the "Eyal Group," which consists of general partner, Renaissance, and Eyal.
 
 
 3
 Plaintiffs over a five year period have loaned moneys to Renflo. They seek to compel the defendants to advance funds to Renflo pursuant to the partnership agreement ("Agreement") or to compel defendant Renaissance, as general partner, to pay its share of the partnership debt (owed to the plaintiffs), and finally, to compel defendant Eyal, as guarantor of Renaissance's debt, to fulfill his obligations as guarantor.
 
 
 4
 The District Court held that under the unambiguous terms of the partnership agreement the defendants were not obligated to make any loans to Renflo and granted summary judgment to defendants.
 
 II.
 
 5
 We review the District Court's grant of summary judgment de novo. Crippen v. Kheder, 741 F.2d 102, 104 (6th Cir.1984). The standard of review for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The issue of whether the terms of a contract are ambiguous is a question of law for the court. Tennessee Consol. Coal Co. v. United Mine Workers of America, 416 F.2d 1192, 1198 (6th Cir.1969), cert. denied, 397 U.S. 964 (1970).
 
 A. Ambiguity of the Agreement
 
 6
 The District Court found that the p 4.3 of the Renflo Limited Partnership Agreement (the "Agreement") was at the "crux of the dispute." Paragraph 4.3 of the Agreement provides in relevant part:
 
 
 7
 Partner Loans to Partnership. If any sums are required to operate the business of the Partnership and to enable the Partnership to develop, improve, carry and market the units in the Project, excluding amounts required to pay any payments of principal on the Partnership's debt service (the "Operating Costs") and including amounts required to pay, on a current basis, the Limited Partner's Preferred Return and interest payments due on the Construction Loan, and if the Capital Contributions and the proceeds of the Construction Loan are not sufficient to pay such costs, then:
 
 
 8
 (a) The GP Renflo Group agrees to make loans to the Partnership for up to the first $400,000 required (the "Initial Loans"), subject to Section 4.3(e). The Initial Loans will bear interest as provided in Section 4.3(d) and will be repaid by the Partnership as provided in Section 5.8.
 
 
 9
 (b) Thereafter, no Partner is obligated to make any capital contributions or loans to the Partnership, but either General Partner, after determining the need for additional funds to operate the business of the Partnership, may call for each of the General Partner Groups to advance any required additional funds to the Partnership (the "Additional Loans"). Any Additional Loans shall be advanced 50% by the GP Renflo Group and 50% by the Eyal Group in such proportions among the members of each Group as they may agree upon or pro rata according to their respective Partnership Percentages in the absence of any agreement.
 
 
 10
 J.A. at 16-17.
 
 
 11
 Defendants argue, and the District Court agreed, that the Agreement unambiguously provides that the defendants are not required to make any loans to the partnership, placing emphasis on the first clause of p 4.3(b) ("[After the initial loans for which the GP Renflo Group is solely responsible], no Partner is obligated to make any capital contributions or loans to the Partnership...."). This construction however gives short shrift to the subsequent qualifying clause, "but either General Partner ... may call for each of the General Partner Groups to advance any required additional funds to the Partnership (the "Additional Loans")."
 
 
 12
 Defendants argue that the word "may" suggests that one General Partner Group may decline to advance funds upon request by the other General Partner. Appellees' Brief at 9-10. This is not, however, what the clause plainly says. The "may" refers to the call, not the response. In fact, the inclusion of the word "required" suggests the obligation to contribute upon request. Because defendants' exegesis of the second clause is inadequate, p 4.3(b) is more ambiguous than the defendants portray it.[2] The Definition Section (j), defining "Default Amount," adds ambiguity when it speaks of a group's "required share" of additional loans.
 
 
 13
 Plaintiffs, on the other hand, argue that p 4.3 unambiguously requires the Eyal Group to match additional loans made by the Renflo Group. Needless to say, Plaintiffs place little emphasis on the first clause of p 4.3(b) which seems to expressly provide for no further obligations of contribution by any Partner after the "Initial Loans" provided for in p 4.3(a). Rather Plaintiffs read the first sentence of p 4.3(b) as providing the exclusive means by which a Partner may be required to contribute capital, i.e., by being called upon to do so by a General Partner.
 
 
 14
 While the Plaintiffs' view of Partners' obligations appears coherent if one places great emphasis on p 4.3(b) as a whole and by itself, their proposed construction is considerably less compelling when considering the Agreement as a whole and in context. In interpreting a partnership agreement, we look to the document as a whole. Florida Canada Corp. v. Union Carbide & Carbon Corp., 280 F.2d 193, 195-96 (6th Cir.), cert. denied sub nom., General Dev. Corp. v. Union Carbide & Carbon Corp., 364 U.S. 902 (1960). Construing the Agreement as a whole with Plaintiffs' view of p 4.3(b) in mind leads to a puzzling paradox which could hardly be called unambiguous.
 
 
 15
 The Agreement states that GP Renflo, as Managing General Partner, has "full and complete authority" in the event that General Partners, Renaissance and GP Renflo, disagree. The Agreement also states that Eyal guarantees all obligations of Renaissance. Following plaintiffs' construction of the p 4.3(b), therefore, the import of the Agreement would be that no Partner is obligated to make additional contributions, subsequent to the Initial Loans, unless GP Renflo obligates Eyal to make additional contributions. Arguing for such a construction seems to us to be arguing a paradox: that the agreement is unambiguously self-contradictory.
 
 
 16
 The District Court held that the Plaintiffs' construction of the Agreement would render meaningless the words, "Thereafter, no Partner is obligated to make any capital contributions or loans to the Partnership...." Therefore, the District Court concluded that the Defendants' construction of the phrase was the only possible construction and was thus unambiguous. See, e.g., Osman v. Summer Green Lawn Care, Inc., 209 Mich.App. 703, 706, 532 N.W.2d 186 (1995) (where a contract is susceptible to only one interpretation, it is unambiguous). However, the District Court, like the defendants, was unable to reconcile the self-contradiction of p 4.3(b). Finding p 4.3(b) unambiguous required the District Court to ignore the plain meaning of the second clause of p 4.3(b) which calls for obligatory contributions upon either General Partner's request.
 
 
 17
 We are unable to agree with the District Court's reasoning. We find that the clause of the Agreement which is central to this case appears self-contradicting and is therefore inherently ambiguous. It is appropriate, therefore, to remand the case for findings of fact with regard to the intent of the parties. Goodwin, Inc. v. Orson E. Coe Pontiac, Inc., 392 Mich. 195, 205, 220 N.W.2d 664 (1974).[3]
 
 B. Liability for Partnership Debt
 
 18
 We decline to address the question raised by the appellants of whether plaintiffs Stollman, Zlotoff and Ran, as creditors of Renflo have all the rights of recourse of any partnership creditor under Michigan Partnership law. Regardless of the status of the creditors in this case, there is no question as to the identity of the debtor, Renflo Limited Partnership. And the debtor is not a party to this case. Yenglin v. Mazur, 121 Mich.App. 218, 224, 328 N.W.2d 624 (1983) (a partnership is a separate entity for the purposes of litigation). Because Renflo Limited Partnership is not a party, the issue of the plaintiffs' rights as Renflo creditors is not properly before us and the question should not have been addressed by the District Court.
 
 III. Conclusion
 
 19
 For the reasons stated, we REVERSE the District Court's granting of summary judgment for the defendants and REMAND for factual inquiry as to the intent of the parties in the formation of the limited partnership agreement and for any other action consistent with this opinion.
 
 
 20
 POTTER, Senior District Judge, dissenting.
 
 
 21
 Because I find the partnership agreement to be unambiguous, I must respectfully dissent from the majority's decision.
 
 
 22
 In the court below and, here, the opposing parties both assert that the contract is not ambiguous and there are no genuine issues of material fact. However, appellants argue in the alternative that since each party has different plausible contentions as to the meaning of certain clauses, there is, therefore, an ambiguity. Contrary to the assertions of the parties, the majority finds an inherent ambiguity in paragraph 4.3(b) and remands for a factual inquiry as to the intent of the parties.
 
 
 23
 However, if there are no genuine issues of material fact as the parties allege, the Court is presented simply with a question of law. The court in Steinmetz Elec. Contractors v. Local Union No. 58, 517 F.Supp. 428 (1981), succinctly stated the law:
 
 
 24
 Thus, the fact that the parties may disagree as to the meaning of contract terms does not necessarily establish the existence of ambiguity in a legal sense. Therefore, summary judgment may be appropriate in a case where the contract terms are clear and unambiguous, even if one party asserts that a result different from that embodied in the terms was intended.
 
 
 25
 In addition to paragraphs 4.3(a) and (b) of the agreement, quoted in the majority opinion, I find as did the district judge, paragraphs 4.3(c) and 7.1 controlling. They are as follows:
 
 
 26
 (c) If one general partner elects to advance any additional loans and the other group fails to provide its 50% share, any other partner or partners may advance the defaulting group's share (the "default amount"). In such event, the defaulting group will have its interest in certain partnership distributions reduced by the "reduction amount" as described herein. The reduction amount shall equal the default amount multiplied by .00137, which product shall be multiplied by the number of days from the date of advance of the default amount to the date the default amount is repaid. The reduction amount shall be deducted pro rata based on partnership percentages from Cash flow which would otherwise be distributable to each member of the defaulting group....
 
 
 27
 7.1 Powers of General Partners. The General Partners shall have the power to act for and bind the partnership to the fullest extent provided by Michigan law.... Subject to section 7.2 or as expressly provided elsewhere in this agreement, any acts to be taken or approved by the general partners shall be by unanimous agreement; however, if the general partners disagree as to any act, decision or approval, GP Renflo, as Managing General Partner, shall have full and complete authority acting in its sole discretion, to make the final determination of the partnership with respect to any such act.... (emphasis added).
 
 
 28
 To suggest that paragraph 4.3(c) is not the sole remedy makes the words "[t]hereafter, no Partner is obligated to make any capital contribution or loans to the Partnership ..." 4.3(b), as the district judge found, meaningless.
 
 
 29
 Appellants' suggested interpretation permits one general partner group to force the other general partner group to advance unlimited funds to Renflo.
 
 
 30
 It is undisputed that appellant was the drafter of the document and that the agreement must therefore be construed against the drafter. Central Jersey Dodge Truck Center v. Sightseer Corp., 608 F.2d 1106, 1110 (6th Cir.1979). With this in mind, I believe the district court's interpretation makes sense in the context of the entire agreement and gives meaning to every phrase in the agreement. In this view, no partner is required to make future capital contributions, but, if one determines need, it can advance a loan and "may" call upon the other to do likewise. In that instance, the other general partner "shall" provide its share or face a diminution in its partnership share as determined by 4.3(c). This latter provision is then plaintiff's sole recourse. See McKinley v. Small, 193 Mich. 436, 439 (1916).
 
 
 31
 Even if the agreement were ambiguous, as this is a de novo review, I would affirm the district court's decision because the parole evidence proffered by the appellee unquestionably supports the district court's interpretation of the agreement. The parties cross-moved for summary judgment, each arguing that there was no disputed issue of material fact. Only the appellees, however, chose to put forth any evidence that was indicative of the parties' intent at the time of the agreement's making. This evidence persuasively supports the appellees' position, as noted by the district court. As plaintiffs chose not to put forth their own evidence in the summary judgment proceeding, a remand at this juncture only serves to give the appellants a second bite at the summary judgment apple.
 
 
 32
 For the foregoing reasons, I would affirm the judgment of the district court.
 
 
 
 *
 Honorable John W. Potter, Senior United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Of the GP Renflo Group, "special" limited partner Gary Singer and limited partner Renflo Investors Ltd. Partnership are not parties to this litigation
 
 
 [2]
 Defendants further seem to suggest that the mechanism provided for in p 4.3(c) in the event of a General Partner Group's failure to advance additional loans represented the requesting General Partner's sole remedy but they point to nothing to show that the parties agreed to this mechanism as the only remedy
 
 
 [3]
 Although it is true that the defendants did provide evidence of some extrinsic facts in their response to plaintiffs' motion for summary judgment and it is also true that the District Court found them persuasive, it seems equally true that summary judgment was not granted nor requested by plaintiffs on that basis. Furthermore, as plaintiffs averred at oral argument, the record does not reflect that plaintiffs have provided all their evidence on this question