WESTINGHOUSE CO. *v.* GAINOR. [1]

130    393
158    634

1. SALE—WARRANTY—NOTICE—WAIVER.

Where under a contract for the sale of a thresher, containing a warranty that the machine should operate to the satisfaction of the purchaser, and also an agreement that the purchaser should immediately notify the agent and seller of the failure of the machine to work satisfactorily, and give them an opportunity to make it work to his satisfaction, the purchaser, on failure of the machine to work to his satisfaction, at once notified the agent, who, instead of insisting that notice should be sent to the seller, asserted that the machine had already been accepted, the necessity of further notice was waived.

2. CONDITIONAL SALE—RETURN OF MACHINE.

A contract for the sale of a thresher provided that if the machine failed to comply with the warranty, and was not accepted, the buyer should return it to the agent at a certain city, but did not mention any place in the city. The agent did not reside in the city, nor have an office there. The machine did not fulfill the warranty, and the buyer wrote the agent, asking where he should leave the machine. The agent in reply insisted that he had already accepted the machine. *Held*, that the purchaser was not bound to return the machine until he was informed where he should leave it.

3. PROMISSORY NOTES — BONA FIDE HOLDER — ERROR WITHOUT PREJUDICE.

Where the jury found that the plaintiff was not a *bona fide* holder of two of three notes given in payment for a thresher, the action of the court in withdrawing from the jury the note maturing first, on the ground that it was not transferred until after maturity, if error, was not prejudicial to the plaintiff.

Error to Cheboygan; Shepherd, J. Submitted April 8, 1902. (Docket No. 4.) Decided April 22, 1902.

*Assumpsit* by the Westinghouse Company against William Gainor upon promissory notes. From a judgment for defendant, plaintiff brings error. Affirmed.

[1] Rehearing denied June 11, 1902.

*Black & Dolan*, for appellant.

*Frost & Sprague*, for appellee.

Moore, J. This suit was brought upon three notes,— one due January 1, 1897, for $100, one due January 1, 1898, for $100, and one due January 1, 1899, for $100. The defense was that the notes were given for a bean thresher, which was sold with a warranty, which was not met. From a judgment rendered in favor of the defendant, the case is brought here by writ of error.

The material parts of the order given for the machine read as follows:

"Cheboygan, July 31, 1896.

"This is to certify that I have this day agreed to purchase of Westinghouse & Co., of Schenectady, N. Y., through their agent, Charles Bates, of Lansing, Mich., the following named machinery, viz.: One bean thresher, with straight stacker, and secondhand, but in good condition, which machinery is to be shipped," etc. "I agree to take the said machinery from the place above mentioned, subject to the conditions of the warranty printed below, and to pay the freight charges thereon. * * *

"I agree to become responsible for the safe-keeping of said machinery until accepted under the warranty printed below, or returned, and within a reasonable time to make a trial of it; and if it performs in accordance with the warranty printed below, after a trial of not to exceed four days, the said machinery shall be deemed accepted by me. In event of this machinery failing to give satisfaction during said trial, I agree that I will immediately notify in writing the said agent, and also Westinghouse & Co., at Schenectady, N. Y., and give him and them an opportunity to make it satisfactory, and when this is done the said machinery shall be deemed accepted by me. If said machinery fail to perform in accordance with the warranty printed below, and if not accepted in accordance with the foregoing, I will deliver said machinery in good order and condition to the said agent at Cheboygan, free from all charges for freight, storage, handling, etc., and without claims for damages of any kind; and the money and notes which shall have been given for said machinery shall then be returned, and this contract rescinded. * * *

"The warranty made upon the machinery specified in the foregoing by the said Westinghouse & Co. is that it shall operate to the satisfaction of the purchaser, and that any defects in the manufacture of it shall be made good by their supplying the defective parts without charge. Where the machine is a combined clover and grain thresher, this warranty extends to it only as a grain machine."

The defendant is an illiterate man, who signed the order by making his mark. No copy of the order was left with him, and he says it was not read to him; that he believed Mr. Bates stated to him its contents. After the machine was received, defendant caused the following letter to be sent:

"CHARLES BATES, Esq.,
        "Lansing, Mich.
    "*Dear Sir:* The machine has arrived, and appears to be used a great deal more than represented to me; but I will say nothing about that if you send me a centerpiece for stacker, 8 feet long, and rattles to match, as the stacker is too short when there is from 200 to 500 bushels of peas to thresh in a place. I have not tried the machine yet."

The request of Mr. Gainor was complied with. When the threshing season arrived, Mr. Gainor, who had had 30 years' experience as a thresher, set the machine at work threshing beans. He testified that he threshed beans with it two days, and was able to thresh less than 200 bushels in that time; that the beans flew out of the side of the machine, and some of them came out of the tail end of it; that the machine separated them all over the barn; that he tried it threshing peas, and could thresh but 50 bushels in a half day; that the pulleys were too narrow; that the belts would break if tightened sufficiently to run the separator, and the cylinder clogged up; that the machine did not give satisfaction, and he dropped the use of the machine, and used the Nichols & Shepard separator, which did good work with the same beans and peas. He then caused the following letter to be sent:

"Oct. 7, 1896.
"CHARLES BATES, State Agent,
        "Lansing, Box 253.
    "*Dear Sir:*  I would like to know what you want me to do with the bean thresher that you sent me.   It is no good.   It will not thresh peas, and it took me one day to thresh 197 bushels of good beans.   If you doubt my word, write to Claude Swain, Cheboygan, Mich.   He is the man that I threshed the beans for.   Please let me know what to do with the machine, as I will not try it again, and as I had the best man I could get to try to make it work, and they say it cannot be made to do good work."

    In reply to that letter, Mr. Gainor received the following letter:

"CHARLES BATES, STATE AGENT,
    "Box 253, Lansing, Mich.
                            "October 12, 1896.
    [Written on the letterhead of Westinghouse & Co.]
"WILLIAM GAINOR,
        "Manning, Michigan.
    "*Dear Sir:*  I am in receipt of your favor of October 7th, and must say that I am surprised, for our customers are having no trouble to thresh 100 bushels of beans an hour with our bean thresher.   Now, if you cannot make the machine work, it is because you or your men do not understand it; and, if you will let me know when you are to try the machine again, I will have a man to operate the machine to the entire satisfaction of any one, and in accordance with our guaranty.   Now, in your letter you refused to try our machine again.   Now, I hope you will not take this position, as it is unfair.   I inclose you a copy of the order which you signed, and you will notice its conditions, and the part you are to fill in the contract.   You agreed in the contract to give us notice if you could not operate the machine yourself, and then, later, after you received the machine, you wrote me a letter saying that, if I would send you four feet more of carrier belt, you would accept the machine and call it satisfactory; and, on receipt of your letter, I sent you the parts requested, and supposed that was the end of it.   Now, we can make the machine work all right, if you will give us an opportunity.   However, we are not compelled to do so, as you accepted the machine by letter long ago; but we are perfectly willing to be fair with you, and show you that the

machine is all right, if you will give us an opportunity. Furthermore, we expect the notes we hold against you to be paid promptly at maturity. I trust you will be considerate and fair in this matter.

"I am, yours very truly,

"CHARLES BATES."

Mr. Gainor says the copy of the order mentioned in the letter was not received by him. A reply was sent to this letter by Frost & Sprague, attorneys for defendant. Other correspondence followed, which it is not important to set out here. Mr. Gainor, after the use already mentioned, housed the machine, and never used it afterwards. The company never sent anybody to attempt to make the machine work properly. Suit was brought upon the notes, all of which were indorsed on the back: "Pay to the order of the Westinghouse Company, without recourse on us. WESTINGHOUSE & CO." There was no date to the indorsements.

The court was requested to direct a verdict for plaintiff because: *First*, defendant failed to give written notice, as required by said contract, to Westinghouse & Co., at Schenectady, N. Y.; *second*, he did not signify to either Mr. Bates, or any one else, his readiness to render friendly assistance in the making of a further test of the machine, but clearly indicated that he was through with, and would have nothing more to do with, it; *third*, he failed to return said machine to Cheboygan, as required by said contract. The plaintiff also requested the court to instruct the jury to return a verdict for the plaintiff for the last two notes, and interest thereon, because, under the undisputed evidence in the case, it appeared that the plaintiff was a *bona fide* purchaser of said notes before they were due. The judge declined to do this. He withdrew the first note from the consideration of the jury, but left it to them to say whether the plaintiff was a *bona fide* holder for value of the other two notes. Among other things, he said:

"The burden of proof is upon Mr. Gainor, the defendant. The notes are found in the possession of the West-

inghouse Company in the ordinary course of business, and, so far as any evidence is shown here, for a valuable consideration; and it then devolves upon Mr. Gainor to show, by a preponderance of the testimony,—testimony that convinces you; that makes you believe honestly and sincerely,—that the Westinghouse Company, who are suing these notes, at the time or before they purchased them, had notice that Mr. Gainor was not indebted to the company,—that the machine had not worked according to the contract."

The only proof of the indorsements made upon the notes is the testimony of Mr. Bates. He did not see them indorsed. His testimony disclosed that the Westinghouse Company manufactured the machines, and that Westinghouse & Co. sold their output; that he was the sales agent for Michigan of the one company, and the collection agent for Michigan of the other company. In response to counsel for plaintiff, he testified:

"*Q.* Your method of business, as I understand it, and you have stated it, since you have been doing business for these respective concerns, has been to sell the machines for Westinghouse & Co. ?

"*A.* Yes, sir.

"*Q.* And when notes have been taken, they have come back to you transferred to the Westinghouse Company, and you have attended to the collections?

"*A.* Yes, sir.

"*Q.* And this is one of a series of notes that you have received in that way of transacting business?

"*A.* Yes, sir.

"*Q.* Acting as an agent for both parties ?

"*A.* Yes, sir.

"*Q.* I understood you to state that you knew the person who signed this name Westinghouse & Co. on the back of each of these notes?

"*A.* Yes, sir.

"*Q.* What was his name?

"*A.* George W. Jones.

"*Q.* Do you know what position he holds in the firm of Westinghouse & Co. ?

"*A.* He is the manager of Westinghouse & Co."

He testified he did not know whether plaintiff had

notice of what these notes were given for, or not, at or before the time it became the owner of the notes. No other witness was called on the part of plaintiff.

The first assignment of error relates to the admission of testimony. We do not discuss it, but we do not think it well taken.

It is insisted defendant cannot avail himself of the defense he pleads, because he did not give written notice to Westinghouse & Co., at Schenectady, N. Y., as required by the contract. We do not deem it necessary to determine whether or not, under the warranty that the machine "shall operate to the satisfaction of the purchaser," if he decided that it did not do its work to his satisfaction, that ends the matter. See *Walter A. Wood Machine Co.* v. *Smith,* 50 Mich. 565 (15 N. W. 906, 45 Am. Rep. 57); *Platt* v. *Broderick,* 70 Mich. 577 (38 N. W. 579). The record shows, as a matter of fact, that notice was at once sent to the State agent, who, instead of saying notice should also be sent to the house, at Schenectady, N. Y., as it was his duty to do if he thought that notice important, knowing defendant had no copy of the contract, nor did he, or the company for whom he was State agent, send a man to make the machine work properly after the receipt of the notice, but, instead of so doing, he misstated the contents of a previous letter, and, though expressing ability to make the machine work all right if given an opportunity, closes his letter by saying:

"However, we are not compelled to do so, as you accepted the machine by letter long ago; but we are perfectly willing to be fair with you, and show you that the machine is all right, if you will give us an opportunity. Furthermore, we expect the notes we hold against you to be paid promptly at maturity. I trust you will be considerate and fair in this matter."

In this connection it is well to recall what was said in Mr. Gainor's letter of October 7th. He does not say he will not permit the company to make the machine work, but he inquires:

"Please let me know what to do with the machine, as I will not try it again, and as I had the best man I could get to try to make it work, and they say it cannot be made to do good work."

There is nothing in this language to relieve the company from its duty to furnish a good machine. The cases cited by counsel are very different from this case. Here we have a notice given to a State agent, and he, instead of insisting upon an insufficient notice, asserts there has already been an acceptance of the machine. We think this a waiver of any further notice, if notice was needed.

It is said the defense cannot be made because the machine was not returned to Cheboygan. Mr. Bates did not reside at Cheboygan, but at Lansing. He had no office there. When inquiry is made of him as to what defendant shall do with the bean thresher, instead of answering that question, he insists that defendant has already accepted the machine. In *Osborn* v. *Rawson*, 47 Mich. 206 (10 N. W. 201), Chief Justice MARSTON, speaking for the court, used the following language:

"It is the warranty of the plaintiffs that the machine would do first-class work, and that if it did not, after they or their agents had an opportunity to remedy the difficulty, then it was to be returned, and a perfect machine delivered in its place. The language, 'to be returned,' would seem to imply that the defendant should return it; but where was it to be returned to, and to whom? To Rawson & Thatcher, at Hornellsville, New York, or to Mr. Day, their agent, and, if to him, at what place? The evidence shows that Day resided in Lapeer. Should it be returned there, or in the field? The contract is silent as to the manner and place of delivery, and we cannot say that the defendant was under any obligation to deliver this reaper to the plaintiffs or their agent at the place of residence of either. It was their duty to remedy the difficulty, and, failing so to do, deliver a perfect machine in its place."

Cheboygan is quite a large town. Where would defendant leave the machine? In the street? At the railroad station? We do not think he was required to

deliver it there until he had been informed in reply to his inquiry where he should leave it.

It is said the court erred in withdrawing the first note from the consideration of the jury. Defendant claims the proofs show clearly the notes were not transferred until after the first one matured. Whether that is so or not, it is evident from the verdict of the jury that they found the plaintiff was not a *bona fide* holder of the notes, without notice. There was testimony upon which to base this verdict, and we ought not to disturb it.

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.