### J. I. CASE THRESHING MACHINE CO. v. HUBER.

1. SALES—FAILURE OF CONSIDERATION — BREACH OF WARRANTY.
    In an action by a vendor of a traction engine on notes given for the purchase price, the defendant, who claims that the engine failed to work as warranted under the contract, may recover amounts paid on the contract of sale, and it is not prejudicial error to permit him to recover on a mistaken theory that there was a failure of consideration under the contract, where the verdict necessarily determined in defendant's favor the same issues which would have been submitted if the case had been correctly tried.

2. SAME — DELIVERY AND ACCEPTANCE — EXPRESS WARRANTY — CONDITIONS.
    A condition in the contract binding the defendant to return the property to the place where he received it, the contract being made on a form used in plaintiff's business, is held to apply to instances where the delivery might be made from a warehouse of the plaintiff, not to a case where the engine was delivered by a railroad company.

Error to Eaton; Smith, J.   Submitted October 22, 1909.   ( Docket No. 151.)   Decided March 5, 1910.

Assumpsit by the J. I. Case Threshing Machine Company against Ezra S. Huber upon a promissory note.   A judgment for defendant is reviewed by plaintiff on writ of error.   Affirmed.

*Huggett & McPeek* and *Cary, Upham & Black,* for appellant.

*Garry C. Fox* and *Frank A. Dean,* for appellee.

The action is assumpsit, the declaration containing the common counts, and setting out, under proper notice, a copy of a promissory note purporting to have been executed by defendant.   The plea is the general issue, with notice that the note sued upon and another note and a certain portable engine were delivered by defendant to plaintiff for a certain other portable steam engine, which plaintiff agreed to thereafter deliver to defendant.

"That instead of delivering the said engine which it agreed to deliver, the said plaintiff wholly failed in that regard, and because of such failure the defendant says that no consideration whatever passed to him for said promissory notes so sued upon, or for said other promissory notes so executed and delivered to said plaintiff simultaneous with said note so sued upon, which this defendant avers the said plaintiff has disposed of to some stranger to said contract, or for said Huber engine so delivered to said plaintiff as part payment for said engine, which said plaintiff so agreed to, but failed to deliver to this defendant.

"And this defendant says that he is entitled to a judgment against said plaintiff for damages because of the disposal and delivery of said note to some stranger to said contract, and also because of the conversion to its own use of said Huber engine of said plaintiff, and claims damages, by reason of the premises aforesaid, at the sum of $2,000."

The contract of the parties is in writing.   By its terms the defendant agreed to receive "on cars on arrival subject to the warranty below printed," and to pay for an en-

gine to be furnished by the plaintiff. The engine was described in the order as:

"One 20–10x10 horse power simple engine, traction, coal and wood burning and the fixtures usually furnished with your engines. Also for the above machinery jacketed boiler."

Defendant did receive and pay for the engine. It was of the kind and description called for by the contract. The contract stipulated that the "purchaser expressly waives all claims for damages on account of the nonfulfillment of said warranty." The agreed method of redress is the return of the engine, or of the defective part or parts, by the purchaser, free of charge, to the place where it was received, and notification to the plaintiff, which at its option may substitute what "shall fill the warranty, or notes and money for such part immediately returned and the contract rescinded to that extent and no further claim made on the company."

There was testimony tending to prove a trial of the engine; notification to plaintiff that it did not perform as it was warranted to do; repeated and continued and unsuccessful efforts of plaintiff's agents to make it perform. The engine was delivered to defendant, by rail, at Charlotte, Mich. It was not returned to plaintiff there, but was left standing, unprotected, on premises of defendant. Plaintiff was notified of the fact, and that defendant "will not under any circumstances accept and pay for the engine." Defendant made no unconditional offer to return it. He received the engine in October. Efforts to make it perform were continued, at intervals, until December 4th. In May following plaintiff, in writing, offered to substitute another engine upon return of the one first sold to the place where it was received, the new engine to be delivered at the same place, and to accept new notes in place of those first taken. In reply defendant stated that he had purchased an engine, and could not accept the offer. He proposed a settlement which, according to his statement, involved a loss to himself of

some $200.   In this letter, as in some written earlier, defendant takes the position that he never accepted the engine.   A clause in the contract of the parties reads as follows:

"It is further understood and expressly agreed that general agents, so called, have no general agency powers, and any breach of this warranty or any omission on the part of the company does not confer any right of damage for delay or loss of work or earnings, or to other damages, and shall not affect the rights of the parties with respect to any other machinery sold the purchasers or any warranty of such other machinery and no cause of action arising out of this contract or transaction shall be offset or counterclaimed against any liability of the purchaser arising out of any other contract or transaction.   In no event shall the company be liable otherwise than for the return of cash and notes actually received by it."

The record shows the following:

"We run the engine down home, and Mr. Thompson and the experts went down, and were standing around there.   I says, 'Now, Mr. Thompson, this is up to you.' I says: 'We can't do nothing with that engine.   What do you want done with it?   He said, 'Let the water out of it;' to let it stand here until there is something done about it.   And then he made some remark there: 'There is something rotten about it; I can't fire it, and,' he says, 'there is nobody can.'   So, I let the water out of the engine, and it sets right there yet.

"*Mr. Huggett:* We move to strike the answer out.

"*The Court:* I understand Thompson is the State agent.

"*Mr. Huggett:* He was State agent at that time.

"*Mr. Dean:* He was acting directly with the factory at the time.

"*Mr. Huggett:* The contract expressly provides that he has no right to make any statement whatever to bind the company, or any other person in testing that machine.

"*The Court:* It doesn't follow it binds the company; but certainly Mr. Huber has a right to say just what he did, and all that was done with the people who came there representing the company.   I will deny the motion to strike.

"*Mr. Huggett:* My brothers are putting it in here with an attempt to bind the company.

"*Mr. Dean:* No; we simply say we never accepted this. If we had not given it a fair test, then they would have said we never tested it. But after we tested it we refused to accept it.

"*The Court:* I will say no statement of that kind can bind the company; but it is permitted by the court to show just what Mr. Huber has done with this engine and all that was done.

"*Mr. Huggett:* Exception.

" Witness continues: That is about all there was to it. After that we drawed the water out, and then the next morning Mr. Thompson, I understood him to say, they telephoned to Racine, and this expert that was from Racine they ordered him to go back the next morning and line this engine up to see whether it was perfectly in line, every part of it properly where it should be; that is the way I understood it; whether it was properly constructed. This gentleman—I really objected to that in the first place, because I didn't know nothing about—particular about lining up an engine. I told him, I says: 'If you will be honest with me, I will submit to your lining this engine up; and, if you find it all right, say it is in regard to being in line, why all right,' and they went at it and lined it up—what they call it. After they got through he says, 'There is nothing I could find out of place about the engine.' So far as everything being in its place where it should be. And they went away then, and the next morning they came back with another man from Racine with what they call an indicator. They wanted me to go to work and try this right out with them again and fire it all up and fill it up with water and fire it up, and put it onto the separator and run it again. And Mr. Thompson told me the day before that he was done with, and that is all there was to it; he had his last man here that he had, and I was surprised at their coming back the next morning with another man. He said this man that was there—the expert that was there was the foreman of the testing room in the factory; the man that was there the day he was trying to fire it. They did not do anything with the indicator. I says, 'I ain't got no time to fool away trying this out again.' I told them they could have the team and the water tank, and do what they were a mind to with the engine, but I wouldn't have anything more to do with it, after they said they got through with it.

"*Q.* From the time that Mr. Thompson instructed you

to draw off the water and leave the engine standing there, has that engine been at the order of the plaintiff?

" *Mr. Cook:* I object to it as leading and calling for the witness' conclusion.

" *The Court:* Answer.

" *Mr. Cook:* Exception.

" *Mr. Dean:* I will change that.

"*Q.* Since Mr. Thompson left the engine and gave you instructions what to do with it, has the engine been at the order of the plaintiff?

" *Mr. Cook:* Objected to for the same reason.

" *The Court:* Overrule it.

" *Mr. Cook:* Exception.

"*A.* Certainly.

"*Q.* Have you ever used it or exercised any acts of ownership over it?

"*A.* No, sir; never done a thing to it."

The jury were instructed that there was no dispute about the order for the engine; that defendant paid in full for it; that he received it, and proceeded to use it in his business of threshing. They were told that the defense to the note was a want of consideration for the same because the plaintiff failed to deliver the engine purchased by defendant; that defendant also sought to recover the amount of the other outstanding note and interest and the value of the second-hand engine turned over to plaintiff in part payment for the engine furnished by plaintiff. In various parts of the charge this theory of defendant was presented to the jury, with the instruction that, if the company failed to make the engine such a one as was ordered, defendant was under no obligations to accept or pay for it. The court was requested by plaintiff to say to the jury:

"(8) There is some claim on the part of the defendant, Huber, that he never received the engine described in the contract, and never accepted the engine that he did receive. In regard to that, you are instructed that the engine received by the defendant, Huber, at the depot at Charlotte on or about September 20, 1907, was an engine of the kind or description called for by the contract or order, and the receipt of said engine, by said defendant at the time and place aforesaid, was an acceptance thereof

by the defendant, subject to the warranty contained in the contract, and the title thereby passed to the defendant, Huber."

This was refused, although the jury were instructed that the engine was of the kind or description called for by the order, and the receipt of the same by defendant was an acceptance subject to the conditions of the warranty. After being out for a time the jury returned into court for further instructions, when the following occurred:

*"The Foreman:* We wish to ask for the ruling of the court as to the further responsibility of the defendant, Mr. Huber, if we find that he followed the instruction of Mr. Thompson as to drawing water from the engine and leaving it where requested or directed by Thompson. We want to know if Huber would be released from the contract and further responsibility if we should find he did as he was directed by the company's agent.

*"The Court:* I don't know but I can give you that better right from the formal charge. Under the topic of the acceptance by Mr. Huber of the engine I gave you this instruction which I think possibly covers what you want:

(X) "'I further charge you that, if you find from the evidence that W. I. Thompson was at the time of the delivery of this engine, and at the time of the testing of the same, the agent for said plaintiff, and ordered and directed the defendant to draw the water from said engine, and to leave the engine where it then stood until an adjustment of the matter between the plaintiff and the defendant, and if you find that the defendant followed such direction, then I charge you that such act would not be an acceptance of such engine, and the defendant would not be held liable for the purchase price thereof.'

" Does that cover what you want ?
*"The Foreman:* I think that is what we wanted."

They returned a verdict for defendant for $1,133.50. Motion for judgment for the note sued upon *non obstante* was made and overruled. A new trial was refused.

OSTRANDER, J. (*after stating the facts*). The contract of the parties is one of sale of a chattel. The

engine was bought and paid for.   Title to it passed to the vendee, and at any ˌtime he might have sold it to another.   The engine was sold with express, but conditional, warranty.   A trial of the engine was required; notice of improper performance, or of defects, was required, and it was one of the conditions that the seller, at its option, might return the purchase price or replace the engine, or any part of it.   The vendee was obligated to render friendly assistance to efforts of the vendor to make the engine perform as it was warranted to do.   Another condition was that the vendee should return the machine to the place where he received it.   There was the necessary trial and the notification.   It will be assumed, for the purposes of this discussion, that the engine was not as warranted. Reasonable friendly assistance was furnished by the vendee.   It would be wholly unreasonable to require the vendee to indefinitely postpone his right to return the machinery, meantime assisting the vendor, whenever called upon, in efforts to make the engine perform.   What the vendee did not do was to return the engine to Charlotte.

The vendee has been permitted to recover from the vendor the entire purchase money and interest, not upon the theory of a recoupment of damages for breach of the warranty, but upon the theory that there had been no acceptance of the engine, and that consideration for the purchase price had wholly failed.   The question is whether, nevertheless, the judgment may be and ought to be sustained. I think it ought to be affirmed, for the following reasons: The condition that the vendee shall return the machinery "to the place where received" is one which may be reasonable and enforceable in many cases.   If the vendee receives the chattel from an agent of the vendor, at a warehouse maintained by the vendor, the condition may be specific enough, and in such cases it must be complied with.   But when machinery is received from a railroad company, upon the premises of the company, how shall the vendee comply with the condition?   No other place of return is suggested in the brief for the plaintiff. He ought

not to be required to commit a trespass in order to comply with a condition which is imposed for the benefit of the vendor. He ought not to be required to negotiate with the railroad freight agent for permission to leave a traction engine on the premises of the company. He ought not to be required to assume the position of a consignor of the machinery, or to pay charges. In principle the point is ruled by *Osborn* v. *Rawson*, 47 Mich. 206 (10 N. W. 201), and *Westinghouse Co.* v. *Gainor*, 130 Mich. 393 (90 N. W. 52).

This ruling renders unimportant the contention that the directions of plaintiff's agent, testified to by the defendant, as to the disposition of the engine changed or varied the contract. There was testimony tending to prove that the engine was without value for the use for which it was purchased. It is unimportant that for old iron it may have some value, or that it may be dismantled, and parts of it be sold or used elsewhere. We are therefore able to say that the real issue was in fact tried without any error which would have affected the result if it had been tried upon a proper legal theory. No other or different testimony would have been or could properly have been produced by either party. Defendant is in no position to accept the result and deny to the plaintiff the right to take the engine. Upon the facts found by the jury costs must, in any event, have been paid by the plaintiff. Under the circumstances we do not feel obliged to reverse the judgment and to order a new trial.

The judgment is affirmed.

MONTGOMERY, C. J., and MOORE, MCALVAY, and BROOKE, JJ., concurred.