### MCKINLEY *v.* SMALL.

1. BILLS AND NOTES—JOINT OBLIGATION—JUDGMENT.

    At common law the owner of a joint and several obligation might elect to proceed against all the obligors jointly or against each severally.

2. SAME—ESTATES OF DECEDENTS.

    Whether proceeding under the common law or under the statute authorizing the obligee to begin proceedings against all or any number of the joint makers of a note (3 Comp. Laws, § 10055, 5 How. Stat. [2d Ed.] § 12705), a plaintiff will be bound by the election that he makes.

3. SAME—EXECUTORS AND ADMINISTRATORS—JOINT NOTE.

    Subsequently to commencing an action on a negotiable instrument, having filed a claim against the estate of a deceased joint maker, and secured the allowance of a proportionate share of the total sum due upon a promissory note, the obligee did not bar or merge his claim against the remaining obligors; where a joint suit is impossible

the plaintiff does not waive the obligation of others who are jointly liable by beginning a separate proceeding against a joint obligor who has deceased.

4. SAME — RECOUPMENT — SET-OFF — ESTATES OF DECEDENTS—EVI-DENCE.

But evidence of the allowance of plaintiff's claim filed against the estate of the joint maker should have been received in evidence as a set-off, where the amount of such judgment has been paid or satisfied.

5. SALES—BREACH OF WARRANTY.

Where defendants gave their joint promissory notes for the purchase price of a stallion which plaintiff warranted to be a reasonably sure foal getter, and there was evidence that the horse showed indications of impotency soon after the purchase, later being taken sick and becoming impotent, it was a question of fact whether the defect existed before the sickness or was caused by it, or by lack of proper care, etc.

6. SAME—RESCISSION OF CONTRACT—REMEDIES.

In case of a breach of warranty that a stallion was a sure foal getter, the purchaser might rescind by redelivering the horse to the seller: and where the buyers took the horse to the barn of the seller, and left him, and it appeared that the seller sold the horse for his keep, and that the barn was the one in which he had been kept before the sale, although the seller lived in another county, the delivery was sufficiently established.

Error to Newaygo; Barton, J. Submitted January 16, 1913. (Docket No. 140.) Decided March 26, 1914.

Assumpsit by John McKinley against Fred L. Small and others on promissory notes of defendants. Judgment for plaintiff, and defendants bring error. Reversed.

*A. G. Day* and *D. G. F. Warner,* for appellants.

*George Luton* and *David E. Burns (J. B. Judkins,* of counsel), for appellee.

BIRD, J. This suit was begun to recover the amount due upon two promissory notes, which had been given to plaintiff for a Percheron stallion. When the suit was commenced, Ernest L. Brown, one of the 11 defendants named in the declaration, was deceased; the other 10 were personally served. While this suit was pending in the circuit court, plaintiff filed a claim for the amount of the notes with the commissioners of the estate of Ernest L. Brown, and it was allowed by them at the sum of $122.15, or at one-eleventh of the amount due thereon. No appeal was taken from this allowance, but whether this allowance was ever paid it does not appear. The proceedings before the commissioners were offered in evidence, but the court refused to receive them on the ground that they were no bar to the pending suit. The defendants claim this was error. They insist that the allowance of the claim by the commissioners was a bar to the present suit.

The rule of the common law was that the owner of a joint and several obligation might elect to proceed against all the obligors jointly, or against each severally. *Fay & Co.* v. *Jenks & Co.*, 78 Mich. 312 (44 N. W. 380). Our statute authorizes proceedings against all or any of them. 3 Comp. Laws, § 10055 (5 How. Stat. [2d Ed.] § 12705). Whether under the common law or under the statute, after the plaintiff has made his election he will be bound by it, and must accept the consequences which come with his election. *Bonesteel* v. *Todd,* 9 Mich. 371 (80 Am. Dec. 90).

There was, however, an exception to this rule which the common law recognized: Where one of the obligors was an infant, or where one of them had been discharged in bankruptcy *(Fay & Co.* v. *Jenks & Co., supra),* or was beyond the jurisdiction of the court *(Bonesteel* v. *Todd, supra)* or, where one of them had died before the suit was commenced (24 Am. & Eng. Enc. Law [2d Ed.], p. 760). In short, where a joint suit was impossible, the holder of the

obligation did not waive his claim against a joint obligor by reason of a separate suit against other joint obligors. *Id.* In the case before us, the plaintiff exercised his election to commence his action against all of the obligors, but was prevented from making it effective against Brown, because he was at the time deceased. In view of this situation, we think the case comes within the exception to the general rule, and that the claim was not so merged in the allowance made by the commissioners as to estop the plaintiff from concluding his suit against the other obligors. It would follow from this that the trial court was not in error in refusing to receive the testimony of these proceedings upon the ground that they were a bar to the pending proceeding.

But the admissibility of the proceedings was urged upon the further ground that they should be admitted and used as a set-off to any amount which the jury might find against the other defendants. We think there is force in this contention. If it should turn out on a retrial of this case that the allowance made by the commissioners had been paid, the proceedings will be admitted for this purpose, as it would not be just to permit a judgment to be rendered for the whole amount against the other defendants if one-eleventh of it has been paid.

A further defense was made that the horse did not fulfill the written guaranty which was given with him. This guaranty provided that:

"We guarantee the above horse to be a reasonably sure foal-getter and transmitter of sixty per cent. of good producing mares owned by the above-named stockholders, provided he shall have plenty of exercise and proper feeding and grooming, care and handling, and in case he should not prove so, we agree to replace him with another of the same breed and price, upon the delivery to us of the above-named horse in as sound and good condition as he is at present."

The defendants gave testimony tending to show that the horse was delivered to them on May 2, 1908, and that he was well cared for and properly fed while in their possession, but that within a month after he was delivered to them, he showed some signs of impotency as a breeder; that in June, 1908, he was sick for a time, and that following this sickness his impotency increased, and that finally he refused to serve mares; that plaintiff was notified of this fact soon after in the summer of 1908, and later several letters were addressed to him advising him that the horse had failed to meet the guaranty, and urging him to replace the horse with another in accordance with the guaranty. There seems to be little question that the horse was impotent, and did not measure up to the guaranty, but the question as to whether this impotency was caused in whole or in part by the sickness of the horse we think under all the proof was a question of fact for the jury. If the impotency was caused by the sickness of the horse, or was due to a lack of proper care or feeding of the horse, the plaintiff would not be liable under his guaranty for the defect complained of; on the other hand, if the jury should find under the testimony that the horse was so affected at the time of the sale, then the defendants would be justified in refusing to keep the horse. We think the trial court was in error in taking this question away from the jury.

The question as to whether the horse was ever redelivered to the plaintiff by the defendants was a question much discussed during the trial. The record shows that in the spring of 1909, the horse was taken to defendant Small's barn, and was kept and later sold by him for his keeping. It is the claim of the defendants that this was a redelivery of the horse to the plaintiff, because it was at this particular barn the horse was being kept at the time they purchased him, and from which he was delivered to them, although

the plaintiff lived in another county. We are of the opinion that a delivery of the horse at the barn of Mr. Small, where he was at the time they purchased him, and where he was delivered to them, was a delivery which satisfied their agreement. For cases bearing upon the question of delivery under such circumstances, see *J. I. Case Threshing Machine Co.* v. *Huber*, 160 Mich. 92 (125 N. W. 66, 32 L. R. A. [N. S.] 212); *Lyon* v. *Lindblad*, 145 Mich. 588 (108 N. W. 969); *Westinghouse Co.* v. *Gainor*, 130 Mich. 393 (90 N. W. 52).

For the errors pointed out, the judgment will be reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.